# EXHIBIT D

**FORMS SCHEDULE**

Policy Number:  01-863-24-81
Division No:    69
Insured Name:   AMTRUST FINANCIAL SERVICES, INC.

Effective  Date: **September 30, 2016**
Expiration Date: **September 30, 2017**

Print date:  **Nov 11, 2016**
Printed by: **Amanda Gernhardt**
Phone # : **913-495-3420**

Underwriter Name: **ALLISON REYNOLDS**
Underwriter Phone # :  **908-679-3629**

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ RTQD01 | | RISK TRANSFER |
| ☐ CLETR2 LETTER | | REGULAR BROKER COVER LETTER |
| ☐ COM001 91222 | | POLICYHOLDER NOTICE |
| ☐ QE7782 | | EDISCOVERY LETTER |
| ☐ QD7728 104122 | | D&O ADMITTED DEC |
| ☐ QT0001 96555 | | TRIA DEC DISCLOSURE FORM |
| ☐ QE1719 75029 | | NEW YORK REG. 121 DEC. DISCLOSURE |
| ☐ QP7732 104123 | | D&O ADMITTED GUTS |
| ☐ QE7746 104163 | | PASSPORT STRUCTURE APPENDIX |
| ☐ QF1405 104870 | | CRISISFUND APPENDIX |
| ☐ QE0703 69898 | | NEW YORK AMENDATORY - CANCELLATION/NONRENEWAL |
| ☐ QE1724 75027 | | NEW YORK CLAIMS MADE AMENDATORY |
| ☐ QE1723 75030 | | NEW YORK DISCOVERY ENDORSEMENT |
| ☐ QE2199 76812 | | NEW YORK REG. 110 RETENTION COINSURANCE ENDORSEMENT |
| ☐ QE7310 83231 | | NEW YORK LAW 3420 AMENDATORY ENDORSEMENT |
| ☐ QE8468 108598 | | NOTICE AND REPORTING AMENDED 90-DAY POST POLICY REPORTING PERIOD |
| ☐ QE8059 106824 | | ENTITY V INSURED EXCLUSION AMENDED WHISTLEBLOWER CARVEBACK |
| ☐ QE8504 108596 | | ENTITY V INSURED EXCLUSION AMENDED CARVEBACKS A AND B DELETE IN DEFENDING ANY CLAIM AGAINST THAT INSURED PERSON WHISTLEBLOWER CARVEBACK |
| ☐ MNSCPT 107187 | | ENTITY V. INSURED EXCLUSION AMENDED |
| ☐ QF1994 119679 | | ECONOMIC SANCTIONS ENDORSEMENT |
| ☐ QE8475 108606 | | SEVERABILITY OF EXCLUSIONS AMENDED TOP 3 OF NAMED ENTITY |
| ☐ QE7721 104143 | | SPECIFIC INVESTIGATION CLAIMS LITIGATION EVENT OR ACT EXCLUSION |
| ☐ QE7719 104141 | | PROFESSIONAL ERRORS & OMISSIONS EXCLUSION (WITH SECURITIES CLAIM CARVE-OUT) |
| ☐ MNSCPT MNSCPT | | PROFESSIONAL ERRORS & OMISSIONS EXCLUSION |

**2-14176**

NOTICE: THES!
APPLICABLE RATES ARE E
REGULATIONS. HOWEVER, (
INSURANCE LAW AND REGUL

YORK INSURANCE LAW AND
RT 2 OF THE NEW YORK

NUSFRM

**FORMS SCHEDULE**

Policy Number: 01-863-24-81
Division No: 69
Insured Name: AMTRUST FINANCIAL SERVICES, INC.

Effective  Date: September 30, 2016
Expiration Date: September 30, 2017

Print date: Nov 11, 2016
Printed by: Amanda Gernhardt
Phone # : 913-495-3420

Underwriter Name: ALLISON REYNOLDS
Underwriter Phone # : 908-679-3629

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ QF1412 | 104938 | EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION WITH SUBLIMIT OF LIABILITY |
| ☐ MNSCPT | 106013 | CLAIM DEFINITION AMENDED |
| ☐ QE5484 | 94039 | STATE AMENDATORY INCONSISTENT |
| ☐ QF1434 | 104962 | SECURITIES CLAIM DEFINITION - COMMON LAW |
| ☐ QE8064 | 106829 | EXTRADITION AMENDED SOUGHT TO BE SURRENDERED |
| ☐ QF1413 | 104940 | ERISA EXCLUSION AMENDED TO APPLY SOLELY TO COMPANY BENEFIT PLANS |
| ☐ QE8063 | 106828 | UK CORPORATE MANSLAUGHTER ACT DEFENSE COSTS AMENDED OTHER LAW |
| ☐ QE8057 | 106822 | SOX 304 COSTS AMENDATORY |
| ☐ QE8465 | 108595 | DODD-FRANK 954 COSTS |
| ☐ QF1431 | 104959 | RETENTION EROSION THROUGH SIDE-A INSURANCE FILL-IN |
| ☐ QF1720 | 117960 | CLASS CERTIFICATION EVENT STUDY EXPENSES |
| ☐ MNSCPT | MNSCPT | DEFINITION OF INSURED AMENDED |
| ☐ QE6621 | 96557 | TERRORISM EXCLUSION - CERTIFIED ACTS |
| ☐ MNSCPT | 117146 | SIDE-A MATCH EDGE (SAME) |
| ☐ QE2392 | 78859 | FORMS INDEX ENDORSEMENT |
| ☐ QE1720 | 75031 | NEW YORK REG. 121 APPLICATION DISCLOSURE |

**2-14176**



NOTICE:       E POLICY FORMS AND THE
              XEMPT FROM THE FILING
REQUIREMENTS OF THE NEW
              FORMS AND RATES MUST
MEET THE MINIMUM STAND      TIONS.
Archive Copy

NUSFRM

| Account Name: | AMTRUST FINANCIAL SERVICES, INC. |
|---|---|

| Policy Number: | 01-863-24-81 | Policy Effective Date: | September 30, 2016 |
|---|---|---|---|
| Underwriter: | ALLISON REYNOLDS | Print Date: | Nov 11, 2016 |

**Initial Risk Transfer Assessment Date:** *August 31, 2016*

| Risk Assessment Date | Risk Transfer Qualification | Risk Assessment Date | Risk Transfer Qualification |
|---|---|---|---|
| 09/23/2016 | R1 | 10/20/2016 | R1 |
| 10/20/2016 | R1 | 11/04/2016 | R1 |
| 11/04/2016 | R1 | 11/04/2016 | R1 |
| 11/07/2016 | R1 | 11/11/2016 | R1 |
| 11/11/2016 | R1 | | |

**Risk Transfer Qualification Key:**

**R1** - Insurance Accounting - Safe Harbor applies to transaction, no Risk Transfer Worksheet necessary
**R2** - Insurance Accounting - Risk Transfer Worksheet completed, approved, and in UW file
**R3** - Deposit Accounting - Risk Transfer Worksheet completed, approved, and in UW file
**R4** - Bifurcated Accounting (Insurance/Deposit) - Risk Transfer Worksheet completed, approved, and in UW file.
If it has been determined that a Risk Transfer Worksheet needs to be completed, please indicate below the individuals whom are required to sign the worksheet:

_____                    _____
Underwriter                                          Division President

_____
Chief Financial Officer

NOTICE:    E POLICY FORMS AND THE
                XEMPT FROM THE FILING
REQUIREMENTS OF THE NEW
                ORMS AND RATES MUST
MEET THE MINIMUM STAND
                TIONS.
*Archive Copy*

**Illinois National Insurance Company**
175 Water Street
New York, NY 10038



212- 458- 5000

November 11, 2016

Direct Dial:   908- 679- 3629

JOHN BOUCHARD
BROWN & BROWN OF NEW YORK INC
45 EAST AVENUE
ROCHESTER, NY 14604

RE:  **AMTRUST FINANCIAL SERVICES, INC.**

Policy Number:   **01- 863- 24- 81**

Dear JOHN

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

ALLISON REYNOLDS
Underwriter
Executive Liability
908- 679- 3629

Enc.

1434476
*2-14176*

NOTICE:
REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND
MEET THE MINIMUM STANDARDS OF THE NEW YORK

BRANCH Archive Copy

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG).  The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy.  You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation or by calling 1-800-706-3102.

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REGULATIONS. HOWEVER, FORMS AND RATES MUST COMPLY WITH INSURANCE LAW AND REGULATIONS.

91222 (9/10)    *Archive Copy*

Executive Liability
175 Water Street
New York, NY 10038
http://www.aig.com



eDiscovery Solutions

Dear Insured:

Congratulations on purchasing your Executive Edge<sup>SM</sup> policy from a member company of AIG Property Casualty Inc. (AIG), one of the premier writers of management liability insurance.  Your policy offers many outstanding features, and as a AIG Insured you have the confidence of knowing that your claims will be handled by highly experienced claims professionals.  In addition, our panel counsel is comprised of leading law firms throughout the country.

The purpose of this letter is to introduce you to eDiscovery Solutions, a value-added program providing e-discovery advantages to Executive Edge policyholders.  The risks associated with not being prepared to handle requests to produce electronically stored information (ESI) are significant as companies are held accountable for missteps made along the way and the potential costs of e-discovery are exorbitant.  eDiscovery Solutions provides Executive Edge policyholders with the advantage of assisting in the creation of an e-discovery plan before litigation commences and the development of a cost-effective strategy to address e-discovery when a claim does arise.  As an Executive Edge policyholder, you have access to the following suite of optional eDiscovery Solutions benefits to minimize the risks and expense of e-discovery:

- Help in creating an effective e-discovery strategy before a claim arises.
    - 2.5 hour "boot camp" by Encore Discovery Solutions (an independent third party provider of e-discovery services) addressing the major components of e-discovery plus an additional 10 hours of expert e-discovery consultation with Encore to assess e-discovery readiness at no cost to insureds that remain on risk.  These services are available at no cost to policyholders and favorable rates are available to those policyholders who wish to purchase additional services.

- Guidance and management through the process of responding to ESI requests.
    - Pre-approved independent experts assist in responding to requests to produce ESI through development of a cost-effective strategy.
    - Pre-approved independent consultants oversee the e-discovery process including assessment of information systems capabilities, locating and preserving relevant electronic data stores, vendor selection, defining scope of work and establishing metrics to evaluate and monitor efficient execution.
    - First $25,000 of consultants' fees covered with no retention and policyholders may choose to continue to benefit from the consultant's services at pre-negotiated favorable rates.

To take advantage of the services offered through eDiscovery Solutions, email ediscoverysolutions@AIG.com or contact your insurance broker or AIG underwriter.

REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.



## Illinois National Insurance Company

*A capital stock company*

(the "**Insurer**")

**POLICY NUMBER:** *01-863-24-81*          **REPLACEMENT OF POLICY NUMBER:** *01-825-48-27*

# Executive Edge®

**Broad Form Management Liability Insurance Policy**

---

NOTICES: This policy provides claims-made coverage. Such coverage is generally limited to liability for (i) **Claims** first made against **Insureds**, (ii) **Inquiries** that an **Insured Person** first received, and (iii) **Crises** first occurring, in each case, during the **Policy Period** or, if applicable, the **Discovery Period**. Coverage under this policy is conditioned upon notice being timely provided to the **Insurer** as required (see the Notice and Reporting clause for details). Covered **Defense Costs**, **Pre-Claim Inquiry Costs** and **Derivative Investigation Costs** shall reduce the **Limits of Liability** available to pay judgments or settlements, and shall be applied against the retention amount. The **Insurer** does not assume any duty to defend. Please read this policy carefully and review its coverage with your insurance agent or broker.

---

## DECLARATIONS

1. **NAMED ENTITY**:      *AMTRUST FINANCIAL SERVICES, INC.*

   **Named Entity Address**:      *59 MAIDEN LANE, 43RD FLOOR*
   *NEW YORK, NY 10038-4646*

   **State of Formation**:      *Delaware*

2. **POLICY PERIOD**:      From: *September 30, 2016*      To: *September 30, 2017*

   The **Policy Period** incepts and expires as of 12:01 A.M. at the **Named Entity Address**.

3. **PREMIUM**:      *$295,494*

4. **LIMIT OF LIABILITY**:      *$10,000,000*

5. **RETENTION**: Not applicable to: (i) **Non-Indemnifiable Loss**, (ii) **Crisis Loss** or (iii) **Derivative Investigation Costs**.

   (a) **Securities Retention**:      *$1,000,000*

   (b) **Employment Practices Retention**:      *$1,000,000*

   (c) All other **Loss** to which a Retention applies:      *$1,000,000*

   If the **Organizations** fail or refuse to satisfy an applicable Retention, this policy shall advance the **Loss** of an **Insured Person** pursuant to the ADVANCEMENT Clause.

6. **PASSPORT**:   This policy [X] serves, or [ ] does not serve, as a master Passport policy.

*1434476*

*2-14176*

104122 (4/10)

**NOTICE:** THESI APPLICABLE RATES ARE E YORK INSURANCE LAW AND FORMS AND RATES MUST ARDS OF THE NEW YORK TIONS.   © All rights reserved.

*BRANCH* *Archive Copy*



**DECLARATIONS** (Continued)

7.    **INSURER**

    (a) **INSURER ADDRESS**:    *175 Water Street*
                                         *New York, NY 10038-4969*

    (b) **CLAIMS ADDRESS**:    By E-Mail: c-claim@AIG.com
                                     By Mail: *AIG, Financial Lines Claims*
                                            *P.O. Box 25947*
                                            *Shawnee Mission, KS 66225*

                                   In either case, reference the Policy Number.

8.    **CONTINUITY DATES**

    (a) **Outside Entity Executive** Coverage--The date on which the **Executive** first served
        as an **Outside Entity Executive** of such **Outside Entity.**

    (b) All other coverage:                                    *July 1, 2004*

9.    **TRIA PREMIUM, TAXES AND SURCHARGES**

    **(a) TRIA Premium**                                   *N/A*

    Coverage for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act, as amended was
    rejected by Insured.   A copy of the TRIA disclosure sent with the original quote is attached hereto.

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President, Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

            **PRESIDENT**                   **AUTHORIZED REPRESENTATIVE**               **SECRETARY**

BROWN & BROWN OF NEW YORK INC
45 EAST AVENUE
ROCHESTER, NY 14604

1434476
**2-14176**
104122 (4/10)

REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.                    © All rights reserved.

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (RIGHT TO PURCHASE COVERAGE)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury-in consultation with the Secretary of Homeland Security, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING JANUARY 1, 2018; 81% BEGINNING JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE



Insured Name: *AMTRUST FINANCIAL SERVICES, INC.*

Policy Number: *01-863-24-81*
Policy Period Effective Date From: *September 30, 2016*  To: *September 30, 2017*

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING

◊ 2015 National Association of Insurance Commissioner

*Archive Copy*

**2-14176**
96555 (1/15)

## NEW YORK REGULATION 121
### DECLARATIONS DISCLOSURE SUPPLEMENT

Solely for the purposes of this supplement, "Claims-made relationship" means that period of time between the effective date of the first claims made policy between us (the Insured) and you (the policy holder) and the cancellation or nonrenewal of the last consecutive claims-made policy between such parties, where there has been no gap in coverage, but does not include any period covered by tail coverage.

### Retroactive Date/Prior Acts Exclusion Date/"Nose" Coverage

Coverage for events that occurred prior to the beginning of the policy period is referred to in this supplement as "nose" coverage. If the policy has a retroactive date feature or an exclusion or other wording deleting coverage for events that occurred before a certain date (a prior acts exclusion), then nose coverage is limited (or non existent) and **THERE WILL BE NO COVERAGE FOR CLAIMS ARISING OUT OF SUCH EVENTS THAT OCCURRED PRIOR TO THAT DATE.**

### Extended Reporting Period/Discovery Period/"Tail" Coverage

The Extended Reporting Period, or Discovery Period as it may be called, will increase the time within which a claim may be eligible for the policy's coverage. This is referred to in this supplement as "tail" coverage. Tail coverage helps to prevent the situation of a claim going uncovered because of cancellation or nonrenewal of the policy or other termination of coverage. Tail coverage provides for a period of time after termination of coverage during which claims first made against you and reported to us in writing, events that occurred before the termination of coverage and otherwise covered by the policy, will be covered. Generally, this optional tail coverage can be purchased if coverage is terminated either by us or by you. If such optional tail coverage is not purchased, an automatic tail coverage goes into effect upon termination of coverage, however, this automatic tail coverage lasts for only 60 days, (90 days if the policyholder is a public entity as defined in section 107 (a)(51) of the New York Insurance Law). After the expiration of the tail coverage, you will have a gap in your insurance coverage, unless you have obtained appropriate coverage to fill the gap. **UPON TERMINATION OF COVERAGE IT IS VERY IMPORTANT THAT YOU CONSULT WITH YOUR INSURANCE AGENT, BROKER OR OTHER PROFESSIONAL INSURANCE ADVISER.**

The length of the optional tail offered in the policy is one (1) year generally but, this option will not be available in some circumstances. It will not be available if coverage is terminated by us because of non-payment of premium or fraud and at the effective date of such termination of coverage a claims-made relationship has continued for less than one year.

### Future Premium Increases As Claims-Made Relationship Matures

During the first several years of being covered on a claims-made basis, claims-made rates are generally comparatively lower than rates on other types of policies generally known as occurrence policies, especially if there is no nose coverage initially, and you can expect substantial annual premium increases, independent of overall rate level increases, until the claims-made relationship reaches maturity.

### Length of Optional Tail and Premium Charged For It

The length of the optional tail offered in this policy and the premium charged for it is as follows (please see the policy form and endorsements for complete details).

NOTICE

THE PACKAGE RATES ARE EXEMPT FROM THE FILING REGULATIONS. HOWEVER, FORMS AND RATES MUST INSURANCE LAW AND REGULATIONS.

© All rights reserved

Length Of Optional Tail

Premium Charge For Optional Tail

One Year

*125* %

**THIS DISCLOSURE SUPPLEMENT GENERALLY DISCUSSES CERTAIN IMPORTANT FEATURES OF THE POLICY. PLEASE READ THE ENTIRE POLICY CAREFULLY AND DISCUSS IT WITH YOUR INSURANCE AGENT OR BROKER OR OTHER PROFESSIONAL INSURANCE ADVISER. THE PROVISIONS OF THE POLICY FORM AND ENDORSEMENTS THERETO ARE CONTROLLING.**

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REGULATIONS. HOWEVER, FORMS AND RATES MUST INSURANCE LAW AND REGULATIONS.

© All rights reserved.

*2-14176*

75029 (7/02)    BRANCHive Copy    Page 2 of 2

**AIG**

# Executive Edge®

## BROAD FORM MANAGEMENT LIABILITY INSURANCE POLICY

| | | |
|---|---|---|
| **1. INSURING AGREEMENTS** | | **1** |
| A. | Insured Person Coverage | 1 |
| B. | Indemnification Of Insured Person Coverage | 1 |
| C. | Organization Coverage | 1 |
| D. | Crisisfund® Coverage | 1 |
| **2. EXTENSIONS** | | **2** |
| A. | Executive Protection Suite | 2 |
| B. | First Dollar E-Discovery Consultant Services | 2 |
| C. | Worldwide & Cross-Border | 2 |
| **3. PROTECTIONS WHEN INDEMNIFICATION IS UNAVAILABLE** | | **3** |
| A. | Advancement | 3 |
| B. | Order of Payments | 3 |
| C. | Bankruptcy And Insolvency | 3 |
| **4. EXCLUSIONS** | | **4** |
| **5. RETENTION** | | **5** |
| **6. LIMITS OF LIABILITY** | | **6** |
| **7. NOTICE AND REPORTING** | | **6** |
| **8. DISCOVERY** | | **8** |
| **9. DEFENSE AND SETTLEMENT** | | **9** |
| A. | For Claims And Pre-Claim Inquiries | 9 |
| B. | Pre-Authorized Securities Defense Attorneys | 10 |
| C. | Pre-Approved E-Consultant Firms | 10 |
| D. | Allocation | 10 |
| **10. CHANGES TO INSUREDS** | | **10** |
| A. | Transactions | 11 |
| B. | Subsidiary Additions | 11 |
| C. | Former Subsidiaries | 11 |
| D. | Scope of Subsidiary Coverage | 11 |
| **11. APPLICATION AND UNDERWRITING** | | **12** |
| A. | Application And Reliance | 12 |
| B. | Renewal Application Procedure | 12 |
| C. | Insured Person Coverage Non-Rescindable | 12 |
| D. | Severability Of The Application | 12 |
| **12. GENERAL TERMS AND CONDITIONS** | | **13** |
| A. | Payments And Obligations Of Organizations And Others | 13 |
| B. | Cancellation | 14 |
| C. | Notice And Authority | 14 |
| D. | Currency | 14 |
| E. | Assignment | 14 |
| F. | Disputes | 15 |
| G. | Spousal, Domestic Partner And Legal Representative Extension | 16 |
| H. | Conformance To Law | 16 |
| I. | Headings | 16 |
| **13. DEFINITIONS** | | **17** |

NOTICE: ...E POLICY FORMS AND THE ...XEMPT FROM THE FILING REQUIREMENTS OF THE NEW ...ORMS AND RATES MUST MEET RANCH MINIMUM STAND ...TIONS.

BRANCH
Archive Copy

104123 (04/10)

© All rights reserved.

Executive Edge 

In consideration of the payment of the premium, and each of their respective rights and obligations in this policy, the **Insureds** and the **Insurer** agree as follows:

## 1. INSURING AGREEMENTS

All coverage granted for **Loss** under this policy is provided solely with respect to:  (i) **Claims** first made against an **Insured**, (ii) **Pre-Claim Inquiries** first received by an **Insured Person**, and (iii) **Crises** first occurring, in each such event, during the **Policy Period** or any applicable **Discovery Period** and reported to the **Insurer** as required by this policy. Subject to the foregoing and the other terms, conditions and limitations of this policy, this policy affords the following coverage:

*A. Insured Person Coverage*

This policy shall pay the **Loss** of any **Insured Person** that no **Organization** has indemnified or paid, and that arises from any:

**(1) Claim** (including any **Insured Person Investigation**) made against such **Insured Person** (including any **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**; or

**(2) Pre-Claim Inquiry**, to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs**.

*B. Indemnification Of Insured Person Coverage*

This policy shall pay the **Loss** of an **Organization** that arises from any:

**(1) Claim** (including any **Insured Person Investigation**) made against any **Insured Person** (including any **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**; and

**(2) Pre-Claim Inquiry**, to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs**;

but only to the extent that such **Organization** has indemnified such **Loss** of, or paid such **Loss** on behalf of, the **Insured Person.**

*C. Organization Coverage*

This policy shall pay the **Loss** of any **Organization**:

(1) arising from any **Securities Claim** made against such **Organization** for any **Wrongful Act** of such **Organization**;

(2) incurred as **Derivative Investigation Costs**, subject to a $250,000 aggregate sublimit of liability; or

(3) incurred by an **Organization** or on its behalf by any **Executives** of the **Organization** (including through any special committee) as **Defense Costs** in seeking the dismissal of any **Derivative Suit** against an **Insured.**

*D. Crisisfund® Coverage*

This policy shall pay the **Crisis Loss** of an **Organization**, up to the $100,000 **CrisisFund®**; provided that payment of any **Crisis Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law.



NOTICE: ... E POLICY FORMS AND THE ... XEMPT FROM THE FILING REQUIREMENTS OF THE NEW ... ORMS AND RATES MUST MEET BRANCH MINIMUM STAND ... TIONS. Archive Copy

 © All rights reserved.

Executive Edge 

## 2. EXTENSIONS

### A. Executive Protection Suite

**Loss** shall also mean the following items, provided that they arise out of a **Claim**:

**(1) SOX 304 Costs**;

**(2) Extradition Costs**;

**(3) UK Corporate Manslaughter Act Defense Costs**;

**(4) Personal Reputation Expenses**, subject to a $100,000 per **Executive** and a $500,000 aggregate sublimit of liability; and

**(5) Asset Protection Costs**, subject to a $50,000 per **Executive** and a $250,000 aggregate sublimit of liability.

### B. First Dollar E-Discovery Consultant Services

For any **Securities Claim**, no Retention shall apply to the first $25,000 in **Defense Costs** incurred as **E-Discovery Consultant Services.**

### C. Worldwide & Cross-Border

| | |
|---|---|
| *Worldwide Territory* | The coverage afforded by this policy shall apply anywhere in the world. |
| *Global Liberalization* | For **Loss** from that portion of any **Claim** maintained in a **Foreign Jurisdiction** or to which the law of a **Foreign Jurisdiction** is applied, the **Insurer** shall apply the terms and conditions of this policy as amended to include those of the **Foreign Policy** in the **Foreign Jurisdiction** that are more favorable to **Insureds** in the **Foreign Jurisdiction.** This *Global Liberalization Clause* shall not apply to any provision of any policy that has worldwide effect, including but not limited to any provision addressing limits of liability (primary, excess or sublimits), retentions, other insurance, non-renewal, duty to defend, defense within or without limits, taxes, conformance to law or excess liability coverage, any claims made provisions, and any endorsement to this policy that excludes or limits coverage for specific events or litigation or that specifically states that it will have worldwide effect. |
| *Passport Master Policy Program* | If the Passport option box has been checked on the Declarations, then this policy shall act as a master policy and the coverage afforded by this policy shall be provided in conjunction with the Passport foreign underlyer policy issued in each jurisdiction selected by the **Named Entity**. The specific structure of the coverage provided by this master policy in conjunction with each Passport foreign underlyer policy is set forth in the Passport Structure Appendix attached to this policy. |

NOTICE: ...E POLICY FORMS AND THE ...XEMPT FROM THE FILING REQUIREMENTS OF THE NEW ...ORMS AND RATES MUST MEE...T...MINIMUM STAND...ITIONS.

BRANCH
Archive Copy

2 © All rights reserved.

Executive Edge



## 3. PROTECTIONS WHEN INDEMNIFICATION IS UNAVAILABLE

### A. Advancement

If for any reason (including but not limited to insolvency) an **Organization** fails or refuses to advance, pay or indemnify covered **Loss** of an **Insured Person** within the applicable Retention, if any, then the **Insurer** shall advance such amounts on behalf of the **Insured Person** until either (i) an **Organization** has agreed to make such payments, or (ii) the Retention has been satisfied. In no event shall any such advancement by the **Insurer** relieve any **Organization** of any duty it may have to provide advancement, payment or indemnification to any **Insured Person.**

Advancement, payment or indemnification of an **Insured Person** by an **Organization** is deemed "failed" if it has been requested by an **Insured Person** in writing and has not been provided by, agreed to be provided by or acknowledged as an obligation by an **Organization** within 60 days of such request; and advancement, payment or indemnification by an **Organization** is deemed "refused" if an **Organization** gives a written notice of the refusal to the **Insured Person.** Advancement, payment or indemnification of an **Insured Person** by an **Organization** shall only be deemed "failed" or "refused" to the extent such advancement, payment or indemnification is not provided, or agreed to be provided, or acknowledged by and collectible from an **Organization**. Any payment or advancement by the **Insurer** within an applicable Retention shall apply towards the exhaustion of the **Limits of Liability.**

### B. Order Of Payments

In the event of **Loss** arising from a covered **Claim(s)** and/or **Pre-Claim Inquiry(ies)** for which payment is due under the provisions of this policy, the **Insurer** shall in all events:

(1)     First, pay all **Loss** covered under Insuring Agreement A. *Insured Person Coverage*;

(2)     Second, only after payment of **Loss** has been made pursuant to subparagraph (1) above and to the extent that any amount of the **Limit of Liability** shall remain available, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of **Loss** covered under Insuring Agreement B. *Indemnification Of Insured Person Coverage*; and

(3)     Lastly, only after payment of **Loss** has been made pursuant to subparagraphs (1) and (2) above and to the extent that any amount of the **Limit of Liability** shall remain available, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of **Loss** covered under Insuring Agreement C. *Organization Coverage* and Insuring Agreement D. *Crisisfund® Coverage***.**

In the event the **Insurer** withholds payment pursuant to subparagraphs (2) and/or (3) above, then the **Insurer** shall, at such time and in such manner as shall be set forth in instructions of the chief executive officer of the **Named Entity**, remit such payment to an **Organization** or directly to or on behalf of an **Insured Person.**

### C. Bankruptcy And Insolvency

Bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations under this policy.

In such event, the **Insurer** and each **Organization** and **Insured Person** agree to cooperate in any efforts by the **Insurer** or any **Organization** or **Insured Person** to obtain relief for the benefit of the **Insured Persons** from any stay or injunction applicable to the distribution of the policy proceeds.

NOTICE

REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND

MEET THE MINIMUM STANDARDS OF THE NEW YORK

BRAC IVW

Archive Copy

Executive Edge

## 4. EXCLUSIONS

### A. Full Severability Of Exclusions For Insured Persons

In determining whether any of the following Exclusions apply, the **Wrongful Acts** of any **Insured Person** shall not be imputed to any other **Insured**. For Insuring Agreement C. *Organization Coverage*, only the **Wrongful Acts** of any chief executive officer, chief financial officer or general counsel (or equivalent position) of an **Organization** shall be imputed to such **Organization**.

### B. Exclusions

The **Insurer** shall not be liable to make any payment for **Loss**, other than **Crisis Loss**, in connection with any **Claim** made against an **Insured**:

| | | |
|---|---|---|
| (1) | *Conduct* | arising out of, based upon or attributable to any: |

(a) remuneration, profit or other advantage to which the **Insured** was not legally entitled; or

(b) deliberate criminal or deliberate fraudulent act by the **Insured**;

if established by any final, non-appealable adjudication in any action or proceeding other than an action or proceeding initiated by the **Insurer** to determine coverage under the policy;

provided, however:

(i) Conduct Exclusion (a), above, shall not apply in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such violations; and

(ii) with respect to Conduct Exclusion (b), for acts or omissions which are treated as a criminal violation in a **Foreign Jurisdiction** that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act occurred;

| | | |
|---|---|---|
| (2) | *Pending & Prior Litigation* | alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (a) litigation; or (b) administrative or regulatory proceeding or investigation of which any **Insured** had notice; or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation; |
| (3) | *Personal Injury* | for emotional distress or mental anguish of any person, or for injury from libel, slander, defamation or disparagement, or a violation of a person's right of privacy; provided, however, this exclusion shall not apply to an **Employment Practices Claim** or a **Securities Claim**; |
| (4) | *Bodily Injury & Property Damage* | for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, this exclusion shall not apply to **UK Corporate Manslaughter Act Defense Costs** or a **Securities Claim**; |

NOTICE: THESE APPLICABLE RATES ARE E

YORK INSURANCE LAW AND FORMS AND RATES MUST ARDS OF THE NEW YORK TIONS.

BRANCH Archive Copy

 © All rights reserved.

Executive Edge



B. *Exclusions* (Continued)

(5) *Entity v. Insured* — that is brought by or on behalf of any **Organization** against any **Insured**, or by any **Outside Entity** against any **Outside Entity Executive**; provided, however, this exclusion shall not apply:

(a) to any **Defense Costs** which constitute **Non-Indemnifiable Loss** incurred by any **Insured Person** in defending any **Claim** against that **Insured Person**;

(b) to any **Derivative Suit** not brought, controlled or materially assisted by any **Organization**, any **Outside Entity** or any **Executive** of the foregoing; or

(c) if the **Organization** or **Outside Entity** is the subject of a bankruptcy case (or the equivalent in a **Foreign Jurisdiction**), unless the **Claim** is brought, controlled or materially assisted by any **Organization** or **Outside Entity**, the resulting debtor-in-possession (or foreign equivalent) of the debtor **Organization** or **Outside Entity** or any **Executive** of the foregoing;

(6) *ERISA* — for any violation of responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 (ERISA), as amended, or any similar provisions of any state, local or foreign statutory or common law; or

(7) *Compensation & Labor Liability* — for any violation of responsibilities, obligations or duties imposed by the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification (WARN) Act, the Consolidated Omnibus Budget Reconciliation Act (COBRA), the Occupational Safety and Health Act (OSHA), or any federal, state, local or foreign law, amendment to a law, or any rule or regulation, that imposes or expands responsibilities, obligations or duties relating to compensation, retirement, benefits, deductions, withholdings, breaks or the workplace; provided, however, this exclusion shall not apply to the extent that a **Claim** is for discrimination, sexual or other harassment, wrongful termination or hostile work environment, or for **Retaliation**, or to the extent that a **Claim** is a **Securities Claim.**

## 5. RETENTION

No Retention is applicable to the following: (i) **Non-Indemnifiable Loss**; (ii) **Derivative Investigation Costs**; or (iii) **Crisis Loss.**

Except as provided above and in the *First Dollar E-Discovery Consultant Services Extension*, for each **Claim** or **Pre-Claim Inquiry**, the **Insurer** shall only be liable for the amount of covered **Loss** arising from such **Claim** or **Pre-Claim Inquiry** which is in excess of the applicable Retention set forth on the Declarations or in any endorsement to this policy. Amounts within the Retention shall remain uninsured.

A single Retention shall apply to **Loss** arising from all **Related Claims** and all **Related Pre-Claim Inquiries.** In the event a **Claim** or **Pre-Claim Inquiry** triggers more than one Retention, then, as to such **Claim** or **Pre-Claim Inquiry**, the highest of such Retentions shall be deemed the Retention applicable to **Loss** arising from such **Claim** or **Pre-Claim Inquiry** unless this policy expressly provides otherwise.

NOTICE: THES APPLICABLE RATES ARE E YORK INSURANCE LAW AND REGULATIONS. HOWEVER, I INSURANCE LAW AND REGULA IARDS OF THE NEW YORK BRANCH Archive Copy

 © All rights reserved.

Executive Edge 

## 6. LIMITS OF LIABILITY

The **Limit of Liability** stated in the Declarations is the aggregate limit of the **Insurer's** liability for all **Loss** (including **Defense Costs** and **Pre-Claim Inquiry Costs**) under this policy. The **Limit of Liability** and all sublimits of liability are collectively referred to in this policy as the **"Limits of Liability."**

Each aggregate sublimit of liability in this policy is the maximum limit of the **Insurer's** liability for all **Loss** under this policy that is subject to that aggregate sublimit of liability. Each per **Executive** sublimit of liability in this policy is the maximum limit of the **Insurer's** liability for all **Loss** of each **Executive** under this policy that is subject to that per **Executive** sublimit of liability. All sublimits of liability shall be part of, and not in addition to, the **Limit of Liability**. Each per **Executive** sublimit of liability shall be part of, and not in addition to, its corresponding aggregate sublimit of liability.

The **Limits of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Limits of Liability** for the **Policy Period**. Further, all **Related Claims** and all **Related Pre-Claim Inquiries** that are considered made or received during the **Policy Period** or **Discovery Period** pursuant to subparagraph (b) or (c) of Clause 7. *Notice And Reporting*, shall also be subject to the applicable **Limits of Liability** set forth in this policy.

**Defense Costs** are not payable by the **Insurer** in addition to the **Limits of Liability**. **Defense Costs** are part of **Loss** and as such are subject to the **Limits of Liability** for **Loss**.

## 7. NOTICE AND REPORTING

Notice hereunder shall be given in writing to the **Insurer** at the **Claims Address** indicated in the Declarations. If mailed or transmitted by electronic mail, the date of such mailing or transmission shall constitute the date that such notice was given and proof of mailing or transmission shall be sufficient proof of notice.

(a)  *Reporting a Claim, Pre-Claim Inquiry or Crisis*

An **Organization** or an **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy:

(1) notify the **Insurer** in writing of a **Claim** made against an **Insured** or a **Crisis**; or

(2) if an **Insured** elects to seek coverage for **Pre-Claim Inquiry Costs** in connection with any **Pre-Claim Inquiry**, notify the **Insurer** in writing of that **Pre-Claim Inquiry**;

as soon as practicable after (i) the **Named Entity's** Risk Manager or General Counsel (or equivalent position) first becomes aware of the **Claim** or **Pre-Claim Inquiry**; or (ii) the **Crisis** commences. In all such events, notification must be provided no later than 60 days after the end of the **Policy Period** or the **Discovery Period** (if applicable).



© All rights reserved.

Executive Edge



<table>
<tr><td>(b)</td><td><em>Relation Back to the First Reported Claim or Pre-Claim Inquiry</em></td><td>Solely for the purpose of establishing whether any subsequent <strong>Related Claim</strong> was first made or a <strong>Related Pre-Claim Inquiry</strong> was first received during the <strong>Policy Period</strong> or <strong>Discovery Period</strong> (if applicable), if during any such period:</td></tr>
</table>

(1) a **Claim** was first made and reported in accordance with Clause 7(a) above, then any **Related Claim** that is subsequently made against an **Insured** and that is reported in accordance with Clause 7(a) above shall be deemed to have been first made at the time that such previously reported **Claim** was first made; and

(2) a **Pre-Claim Inquiry** was actually first received by an **Insured Person** and reported in accordance with Clause 7(a) above, then:

  (i)  any **Related Pre-Claim Inquiry** that is reported in accordance with Clause 7(a) above shall be deemed to be a **Pre-Claim Inquiry** first received at the time that such previously reported **Pre-Claim Inquiry** was first received by an **Insured Person**; and

  (ii) any subsequent **Related Claim** that is reported in accordance with Clause 7(a) above shall be deemed to be a **Claim** first made at the time that such previously reported **Pre-Claim Inquiry** was first received by an **Insured Person.**

With respect to any subsequent **Related Pre-Claim Inquiry**, this policy shall not cover **Loss** incurred before such subsequent **Related Pre-Claim Inquiry** is actually received by an **Insured Person**, and with respect to any subsequent **Related Claim**, this policy shall not cover **Loss** incurred before such subsequent **Related Claim** is actually made against an **Insured**. **Claims** actually first made or deemed first made prior to the inception date of this policy, **Pre-Claim Inquiries** first received or deemed first received by an **Insured Person** prior to the inception date of this policy, and **Claims** or **Pre-Claim Inquiries** arising out of any circumstances of which notice has been given under any directors and officers liability insurance policy in force prior to the inception date of this policy, are not covered under this policy.

<table>
<tr><td>(c)</td><td><em>Relation Back to Reported Circumstances Which May Give Rise to a Claim</em></td><td>If during the <strong>Policy Period</strong> or <strong>Discovery Period</strong> (if applicable) an <strong>Organization</strong> or an <strong>Insured Person</strong> becomes aware of and notifies the <strong>Insurer</strong> in writing of circumstances that may give rise to a <strong>Claim</strong> being made against an <strong>Insured</strong> and provides details as required below, then any <strong>Claim</strong> that is subsequently made against an <strong>Insured</strong> that arises from such circumstances and that is reported in accordance with Clause 7(a) above shall be deemed to have been first made at the time of the notification of circumstances for the purpose of establishing whether such subsequent <strong>Claim</strong> was first made during the <strong>Policy Period</strong> or during the <strong>Discovery Period</strong> (if applicable). Coverage for <strong>Loss</strong> arising from any such subsequent <strong>Claim</strong> shall only apply to <strong>Loss</strong> incurred after that subsequent <strong>Claim</strong> is actually made against an <strong>Insured</strong>. In order to be effective, notification of circumstances</td></tr>
</table>

must specify the facts, circumstances, nature of the alleged **Wrongful Act** anticipated and reasons for anticipating such **Claim**, with full particulars as to dates, persons and entities involved; however, notification that includes a copy of an agreement to toll a statute of limitations shall be presumed sufficiently specific as to the potential **Claims** described within that agreement.

NOTICE: STATE POLICY FORMS AND THE REQUIREMENTS OF THE NEW CIRCUMSTANCES MUST MEET THE MINIMUM STANDard...TIONS.

BRANCH
Archive Copy

7   © All rights reserved.

Executive Edge

## 8. DISCOVERY

**Bilateral Discovery Options**

Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew or replace this policy, the **Insureds** shall have the right to a period of one to six years following the effective date of such cancellation or nonrenewal (the "**Discovery Period**"), upon payment of the respective "**Additional Premium Amount**" described below, in which to give to the **Insurer** written notice pursuant to Clause 7(a) and Clause 7(c) of the policy of: (i) **Claims** first made against an **Insured**; (ii) **Pre-Claim Inquiries** first received by an **Insured Person**; and (iii) circumstances of which an **Organization** or an **Insured** shall become aware, in any such case, during said **Discovery Period** and solely with respect to a **Wrongful Act** that occurs prior to the end of the **Policy Period.**

**Discovery Premium**

The **Additional Premium Amount** for: (a) one year shall be no more than 125% of the **Full Annual Premium**; (b) two to six years shall be an amount to be determined by the **Insurer**. As used herein, "**Full Annual Premium**" means the premium level in effect immediately prior to the end of the **Policy Period.**

**Transaction Option**

In the event of a **Transaction**, the **Named Entity** shall have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable and the additional premium charged is non-refundable in whole or in part. This *Discovery Clause* shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this *Discovery Clause* shall terminate unless written notice by any **Insured** of election of a **Discovery Period**, together with the additional premium due, is received by the **Insurer** no later than thirty (30) days subsequent to the effective date of the cancellation, nonrenewal or **Transaction.**



8

© All rights reserved.

Executive Edge 

## 9.  DEFENSE AND SETTLEMENT

### A. For Claims And Pre-Claim Inquiries

**(1)** *No Duty to Defend or Investigate*

The **Insureds** shall defend and contest any **Claim** made against them. The **Insurer** does not assume any duty to defend or investigate.

**(2)** *Advancement*

Once the **Insurer** has received written notice of a **Claim** or **Pre-Claim Inquiry** under this policy, it shall advance, excess of any applicable Retention, covered **Defense Costs** or **Pre-Claim Inquiry Costs**, respectively, on a current basis, but no later than 90 days after the **Insurer** has received itemized bills for those **Defense Costs** or **Pre-Claim Inquiry Costs**. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured Person** or **Organization**, severally according to their respective interests, in the event and to the extent that any such **Insured Person** or **Organization** shall not be entitled under this policy to payment of such **Loss.**

**(3)** *Claims Participation and Cooperation*

The **Insurer** shall have the right, but not the obligation, to fully and effectively associate with each and every **Organization** and **Insured Person** in the defense and prosecution of any **Claim** or **Pre-Claim Inquiry** that involves, or appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Organization** and **Insured Person** shall give the **Insurer** full cooperation and such information as it may reasonably require.

The failure of any **Insured Person** to give the **Insurer** cooperation and information as required in the preceding paragraph shall not impair the rights of any other **Insured Person** under this policy.

The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any **Defense Costs** or **Pre-Claim Inquiry Costs**, without the prior written consent of the **Insurer**.  Such consent shall not be unreasonably withheld.

**(4)** *Full Settlement Within Retention/ Consent Waived*

If all **Insured** defendants are able to dispose of all **Claims** and/or **Pre-Claim Inquiries** which are subject to one Retention (inclusive of **Defense Costs**) for an amount not exceeding the Retention, then the **Insurer's** consent shall not be required for such disposition.

**(5)** *Applicability*

This *Defense and Settlement Clause* is not applicable to **Crisis Loss** or **Personal Reputation Expenses**. Nevertheless the **Insurer** does not, under this policy, assume any duty to defend.



 © All rights reserved.

Executive Edge

### B. Pre-Authorized Securities Defense Attorneys

The list of approved panel counsel law firms ("**Panel Counsel**") is accessible through the online directory at http://www.aig.com/us/panelcounseldirectory under the "Directors & Officers (Securities Claims)" link. The list provides the **Insureds** with a choice of law firms from which a selection of legal counsel shall be made to conduct the defense of any **Securities Claim** made against such **Insureds**. With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel** different from that selected by another **Insured** defendant if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable. The list of **Panel Counsel** may be amended from time to time by the **Insurer**. However, if a firm is removed from the list during the **Policy Period**, the **Insureds** shall be entitled to select such firm to conduct the defense of any **Securities Claim** made against such **Insureds** during the **Policy Period**.

The **Insureds** shall select a **Panel Counsel** to defend the **Securities Claim** made against the **Insureds** in the jurisdiction in which the **Securities Claim** is brought. In the event the **Claim** is brought in a jurisdiction not included on the list, the **Insureds** shall select a **Panel Counsel** in the listed jurisdiction which is the nearest geographic jurisdiction to either where the **Securities Claim** is brought or where the corporate headquarters of the **Named Entity** is located. In such instance the **Insureds** also may, with the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld, select a non-**Panel Counsel** in the jurisdiction in which the **Securities Claim** is brought to function as "local counsel" on the **Claim** to assist the **Panel Counsel** which will function as "lead counsel" in conducting the defense of the **Securities Claim**. This *Pre-Authorized Securities Defense Attorneys Clause* does not apply to **Defense Costs** solely relating to **Extradition** even if the underlying **Wrongful Acts** relate to a **Securities Claim**.

### C. Pre-Approved E-Consultant Firms

The list of pre-approved e-discovery consulting firms ("**E-Consultant Firms**") is accessible through the online directory at http://www.aig.com/us/panelcounseldirectory under the "e-Consultant Panel Members" link. The list provides the **Insureds** with a choice of firms from which a selection of an **E-Consultant Firm** shall be made. Any **E-Consultant Firm** may be hired by an **Insured** to perform **E-Discovery Consultant Services** without further approval by the **Insurer**.

### D. Allocation

An **Organization** is covered, subject to the policy's terms, conditions and limitations, only with respect to: (1) its indemnification of its **Insured Persons** as respects a **Claim** against or **Pre-Claim Inquiry** received by such **Insured Persons**; (2) a **Securities Claim** against such **Organization**; (3) **Crisis Loss**; and (4) **Derivative Investigation Costs**. Accordingly, the **Insurer** has no obligation under this policy for defense or other costs incurred by, judgments against or settlements by an **Organization** arising out of a **Claim** made against an **Organization** except as respects coverage for a **Securities Claim**, or any obligation to pay loss arising out of any legal liability that an **Organization** has to a claimant, except as respects a covered **Securities Claim** against such **Organization**.

With respect to: (i) **Defense Costs** jointly incurred by; (ii) any joint settlement entered into by; and/or (iii) any judgment of joint and several liability against any **Organization** and any **Insured Person** in connection with any **Claim** other than a **Securities Claim**, such **Organization** and such **Insured Person** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts as between such **Organization**, such **Insured Person** and the **Insurer**, taking into account the relative legal and financial exposures, and the relative benefits obtained by such **Insured Person** and such **Organization**. In the event that a determination as to the amount of **Defense Costs** to be advanced under this policy cannot be agreed to, then the

NOTICE
APPLICABLE RATES ARE E...
...
BRANCH
Archive Copy

© All rights reserved.

Executive Edge 

Insurer shall advance **Defense Costs** excess of any applicable Retention which the **Insurer** states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

## 10.  CHANGES TO INSUREDS

### A. Transactions

In the event of a **Transaction** during the **Policy Period**, this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any **Wrongful Act** alleged to have occurred after the effective time of the **Transaction**. This policy may not be canceled after the effective time of the **Transaction** and no portion of the premium paid for this policy shall be refundable.  The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in the *Transaction Option* paragraph of Clause 8. *Discovery*.

### B. Subsidiary Additions

In addition to the definition of **"Subsidiary"** set forth in Clause 13. *Definitions*, **Subsidiary** also means any for-profit entity: (i) that is not formed as a partnership, (ii) of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and (iii) whose assets amount to:

(1) less than 25% of the total consolidated assets of each and every **Organization** as reported in the **Named Entity's** most recent public filing; or

(2) 25% or more of those total consolidated assets, but such entity shall be a **"Subsidiary"** only: (i) for a period of sixty (60) days from the date the **Named Entity** first had **Management Control** of such entity; or (ii) until the end of the **Policy Period**, whichever expires or ends first (the **"Auto-Subsidiary Period"**);

provided that, with respect only to entities described in subparagraph (2) above, the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**.

The **Insurer** shall extend coverage for any **Subsidiary** described in subparagraph (2) above, and any **Insured Person** thereof, beyond its respective **Auto-Subsidiary Period** if during such **Auto-Subsidiary Period**, the **Named Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and amendment of the provisions of this policy required by the **Insurer** relating to such **Subsidiary**. Further, coverage as shall be afforded to any **Subsidiary** and any **Insured Person** thereof is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to such **Subsidiary**.

### C. Former Subsidiaries

In the event the **Named Entity** loses **Management Control** of a **Subsidiary** during or prior to the **Policy Period**, coverage with respect to such **Subsidiary** and its **Insured Persons** shall continue until termination of this policy but only with respect to **Claims** for **Wrongful Acts** that occurred or are alleged to have occurred during the time that the **Named Entity** had **Management Control** of such entity either directly or indirectly through one or more of its  **Subsidiaries**.

### D. Scope Of Subsidiary Coverage

Coverage as is afforded under this policy with respect to a **Claim** made against any **Subsidiary** and/or any **Insured Person** thereof shall only apply for **Wrongful Acts** committed or allegedly committed during the time that such **Subsidiary** and such **Insured Person** meet the respective definitions of **Subsidiary** and **Insured Person** set forth in this policy.

THE POLICY FORMS AND THE
ARE EXEMPT FROM THE FILING
REQUIREMENT OF THE NEW
—ORMS AND RATES MUST
MEET THE MINIMUM STAND
ITIONS.
BRANCH
Archive Copy

© All rights reserved.

Executive Edge



# 11.   APPLICATION AND UNDERWRITING

### A. Application And Reliance

The **Insurer** has relied upon the accuracy and completeness of the statements, warranties and representations contained in the **Application**. All such statements, warranties and representations are the basis for this policy and are to be considered as incorporated into this policy.

### B. Renewal Application Procedure

A written renewal application form is not required in order to receive a renewal quote from the **Insurer**, although the **Insurer** reserves the right to require specific information upon renewal.

### C. Insured Person Coverage Non-Rescindable

Under no circumstances shall the coverage provided by this policy for **Loss** under Insuring Agreement A. *Insured Person Coverage* be deemed void, whether by rescission or otherwise, once the premium has been paid.

### D. Severability Of The Application

The **Application** shall be construed as a separate application for coverage by each **Insured Person**. With respect to the **Application**, no knowledge possessed by any **Organization** or any **Insured Person** shall be imputed to any other **Insured Person.**

If the statements, warranties and representations in the **Application** were not accurate and complete and materially affected either the acceptance of the risk or the hazard assumed by the **Insurer** under the policy, then the **Insurer** shall have the right to void coverage under this policy, *ab initio*, with respect to:

(1) **Loss** under Insuring Agreement B. *Indemnification Of Insured Person Coverage* for the indemnification of any **Insured Person** who knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed; and

(2) **Loss** under Insuring Agreement C. *Organization Coverage* if any **Insured Person** who is or was a chief executive officer or chief financial officer of the **Named Entity** knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed.

The foregoing applies even if the **Insured Person** did not know that such incomplete or inaccurate disclosure had been provided to the **Insurer** or included within the **Application.**



© All rights reserved.

Executive Edge



## 12.   GENERAL TERMS AND CONDITIONS

### A. Payments And Obligations Of Organizations And Others

#### 1.   INDEMNIFICATION BY ORGANIZATIONS

The **Organizations** agree to indemnify the **Insured Persons** and/or advance **Defense Costs** to the fullest extent permitted by law. If the **Insurer** pays under this policy any indemnification or advancement owed to any **Insured Person** by any **Organization** within an applicable Retention, then that **Organization** shall reimburse the **Insurer** for such amounts and such amounts shall become immediately due and payable as a direct obligation of the **Organization** to the **Insurer.** The failure of an **Organization** to perform any of its obligations to indemnify the **Insured Persons** and/or advance **Defense Costs** under this policy shall not impair the rights of any **Insured Person** under this policy.

#### 2.   OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible directors and officers liability insurance, unless such other insurance is specifically written as excess insurance over the **Limit of Liability** provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**. Such insurance as is provided by this policy shall apply as primary to any personal "umbrella" excess liability insurance purchased by an **Insured Person.**

With respect to **Employment Practices Claims**, such insurance as is provided by this policy shall apply only as excess of any other valid and collectible employment practices liability insurance, unless such other insurance is specifically written as excess insurance over the **Limit of Liability** provided by this policy. If according to the terms and conditions of any employment practices liability insurance policy providing coverage for an **Employment Practices Claim** made against an **Insured**, an insurer issuing such policy is not liable for **Loss**, then the **Insurer** shall be liable for payment of the portion of such **Loss** constituting covered **Loss** under this policy (specifically excess of any other valid and collectible employment practices liability insurance providing coverage for such **Loss**).

In the event of a **Claim** made against an **Outside Entity Executive**, coverage as is afforded by this policy, whether under the *Insured Person Coverage* or the *Indemnification Of Insured Person Coverage*, shall be specifically excess of: (a) any indemnification provided by an **Outside Entity**; and (b) any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**.   Further, in the event such other **Outside Entity** insurance is provided by the **Insurer** or any other insurance company affiliate thereof (**"Other Policy"**) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a claim as required), then the **Insurer's** maximum aggregate **Limit of Liability** for all **Loss** under this policy, as respects any such **Claim**, shall be reduced by the amount recoverable under such **Other Policy** for loss incurred in connection with such **Claim.**

#### 3.   SUBROGATION

To the extent of any payment under this policy, the **Insurer** shall be subrogated to all of the **Organizations'** and **Insureds'** rights of recovery. Each **Organization** and each **Insured Person** shall execute all papers reasonably required and provide reasonable assistance and cooperation in securing or enabling the **Insurer** to exercise subrogation rights or any other rights, directly or in the name of the **Organization** or any **Insured Person.**

In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this policy unless the Conduct Exclusion applies with regard to such **Insured**.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REGULATIONS. HOWEVER, FORMS AND RATES MUST

BRANCH
Archive Copy

    INSURANCE LAW AND REGULATIONS.    © All rights reserved.

Executive Edge

### 4. RECOVERY OF LIMITS

In the event the **Insurer** recovers amounts it paid under this policy, the **Insurer** will reinstate the **Limits of Liability** of this policy to the extent of such recovery, less its costs incurred in administering and obtaining such recovery. The **Insurer** assumes no duty to seek a recovery of any amounts paid under this policy. The **Insurer**, in its sole and absolute discretion, shall determine the amounts to be credited, if any, toward a reinstatement of the **Limits of Liability.**

### B. Cancellation

The **Named Entity** may cancel this policy at any time by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent. This policy may only be canceled by or on behalf of the **Insurer** in the event of non-payment of premium by the **Named Entity**. In the event of non-payment of premium by the **Named Entity**, the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified, or other first class mail, at the **Named Entity Address**, written notice stating when, not less than 15 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect. If the **Named Entity** shall cancel this policy, the **Insurer** shall retain the *pro rata* proportion of the premium herein.

### C. Notice And Authority

The **Named Entity** shall act on behalf of its **Subsidiaries** and each and every **Insured** with respect to the giving of notice of a **Claim, Pre-Claim Inquiry**, **Crisis** or circumstance, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, and the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining of any right to a **Discovery Period**; provided, however, that the foregoing shall not limit the ability of an **Organization** or **Insured** to provide notice of a **Claim, Pre-Claim Inquiry**, **Crisis** or circumstance in accordance with Clause 7. *Notice And Reporting*, or to elect discovery and pay the **Additional Premium Amount** (as defined in Clause 8. *Discovery*).

### D. Currency

All premiums, limits, retentions, **Loss** and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal ).

### E. Assignment

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer.**



© All rights reserved.

Executive Edge

## F. Disputes

### 1. ALTERNATIVE DISPUTE RESOLUTION

**ADR Options**

All disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, shall be submitted to an alternative dispute resolution (ADR) process as provided in this clause. The **Named Entity** may elect the type of ADR process discussed below; provided, however, that absent a timely election, the **Insurer** may elect the type of ADR. In that case, the **Named Entity** shall have the right to reject the **Insurer's** choice of the type of ADR process at any time prior to its commencement, after which, the **Insured's** choice of ADR shall control.

**Mediation**

In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 90 days shall have elapsed from the date of the termination of the mediation.

**Arbitration**

In the event of arbitration, the decision of the arbitrator(s) shall be final, binding and provided to both parties, and the arbitration award shall not include attorney's fees or other costs.

**ADR Process**

*Selection of Arbitrator(s) or Mediator*: The **Insurer** and the **Named Entity** shall mutually consent to: (i) in the case of arbitration, an odd number of arbitrators which shall constitute the arbitration panel, or (ii) in the case of mediation, a single mediator. The arbitrator, arbitration panel members or mediator must be disinterested and have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. In the absence of agreement, the **Insurer** and the **Named Entity** each shall select one arbitrator, the two arbitrators shall select a third arbitrator, and the panel shall then determine applicable procedural rules.

*ADR Rules*: In considering the construction or interpretation of the provisions of this policy, the mediator or arbitrator(s) must give due consideration to the general principles of the law of the **State of Formation** of the **Named Entity**. Each party shall share equally the expenses of the process elected. At the election of the **Named Entity**, either choice of ADR process shall be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state reflected in the **Named Entity Address**. The **Named Entity** shall act on behalf of each and every **Insured** under this *Alternative Dispute Resolution Clause*. In all other respects, the **Insurer** and the **Named Entity** shall mutually agree to the procedural rules for the mediation or arbitration. In the absence of such an agreement, after reasonable diligence, the arbitrator(s) or mediator shall specify commercially reasonable rules.



NOTICE: ... E POLICY FORMS AND THE ... XEMPT FROM THE FILING REQUIREMENTS OF THE NEW ... FORMS AND RATES MUST MEE THE MINIMUM STAND ... TIONS.

*BRANCH*
*Archive Copy*

© All rights reserved.

Executive Edge

### 2. ACTION AGAINST INSURER

Except as provided in Clause 12.F.1. *Alternative Dispute Resolution*, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, or until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against such **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Insurer.**

Any **Insured** or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against any **Insured** or **Organization** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by any **Insured Person**, his or her spouse or legally recognized domestic partner, any **Organization** or any legal representative of the foregoing.

### G. Spousal, Domestic Partner And Legal Representative Extension

If a **Claim** against an **Insured Person** includes a **Claim** against: (i) the lawful spouse or legally recognized domestic partner of such **Insured Person**; or (ii) a property interest of such spouse or domestic partner, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Insured Person**, this policy shall pay covered **Loss** arising from the **Claim** made against such spouse or domestic partner or the property of such spouse or domestic partner to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse or domestic partner.  This policy shall pay covered **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, and the legal representatives of any **Insured Person** in the event of incompetence, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were alleged to have been committed.

### H. Conformance To Law

In the event that there is an inconsistency between: (i) any period of limitation in this policy relating to the giving of notice of cancellation or discovery/extended reporting election, and (ii) the minimum or maximum period required by applicable law, where such law allows, the **Insurer** will resolve the inconsistency by applying the notice period that is more favorable to the **Insureds**.  Otherwise, the notice period is hereby amended to the extent necessary to conform to applicable law.

Coverage under this policy shall not be provided to the extent prohibited by any law.

### I. Headings

The descriptions in the headings and the Guide of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REGULATIONS. HOWEVER, FORMS AND RATES MUST *BRANCH* INSURANCE LAW AND REGULATIONS. *Archive Copy*

16 © All rights reserved.

Executive Edge

## 13.  DEFINITIONS

Terms with **"Bold"** typeface are used in this policy with the meanings and values ascribed to them below and/or in the Declarations:

**Application**    means:

(1) the written statements and representations made by an **Insured** and provided to the **Insurer** during the negotiation of this policy, or contained in any application or other materials or information provided to the **Insurer** in connection with the underwriting of this policy;

(2) all warranties executed by or on behalf of an **Insured** and provided to the **Insurer** in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy issued by the **Insurer**, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time; and

(3) each and every public filing by or on behalf of an **Organization** made with the SEC, including but not limited to the **Organization's** Annual Report(s), 10Ks, 10Qs, 8Ks and proxy statements, any financial information in such filings, and any certifications relating to the accuracy of the foregoing, provided that such public filing was filed during the 12 month period immediately preceding the inception of the **Policy Period.**

**Asset Protection Costs**    means reasonable and necessary fees, costs and expenses consented to by the **Insurer** incurred by an **Executive** of an **Organization** to oppose any efforts by an **Enforcement Body** to seize or otherwise enjoin the personal assets or real property of such **Executive** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof.

**Claim**    means:

(1) a written demand for monetary, non-monetary or injunctive relief, including, but not limited to, any demand for mediation, arbitration or any other alternative dispute resolution process;

(2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges;

(3) an **Insured Person Investigation**;

(4) a **Derivative Demand**;

(5) an official request for **Extradition** of any **Insured Person**, or the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition.**

"**Claim**" shall include any **Securities Claim** and any **Employment Practices Claim.**

**Crisis**    has the meaning as defined in the Crisis und  Appendix attached to this policy.

**CrisisFund®**    means in the case of all Crisis Loss, including Delisting Crisis Loss, $100,000 for all Crisis Loss in the aggregate for all Crises first occurring during the **Policy Period** or any applicable **Discovery Period**.

E POLICY FORMS AND THE XEMPT FROM THE FILING REQUIREMENTS OF THE NEW  ORMS AND RATES MUST MEET THE MINIMUM STAND   ITIONS.  BRANCH  Archive Copy

© All rights reserved.

Executive Edge                                            

| | |
|---|---|
| **Crisis Loss** | has the meaning as defined in the CrisisFund® Appendix attached to this policy. **"Delisting Crisis Loss"** means a **Crisis Loss** resulting solely from a **Delisting Crisis** (as defined in the CrisisFund ® Appendix). |
| **Defense Costs** | means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the cost of **E-Discovery Consultant Services** and premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from: |

(1) the investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured**; or

(2) an **Insured Person** lawfully: (i) opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of that **Insured Person**; or (ii) appealing any order or other grant of **Extradition** of that **Insured Person.**

**Defense Costs** shall not include: (i) **Derivative Investigation Costs,** (ii) **Pre-Claim Inquiry Costs**, or (iii) the compensation of any **Insured Person.**

| | |
|---|---|
| **Derivative Demand** | means a written demand by any shareholder of an **Organization** upon the board of directors (or equivalent management body) of such **Organization** to commence a civil action on behalf of the **Organization** against any **Executive** of the **Organization** for any actual or alleged wrongdoing on the part of such **Executive.** |
| **Derivative Investigation** | means, after receipt by any **Insured** of a **Claim** that is either a **Derivative Suit** or a **Derivative Demand**, any investigation conducted by the **Organization**, or on behalf of the **Organization** by its board of directors (or the equivalent management body) or any committee of the board of directors (or equivalent management body), as to how the **Organization** should respond. |
| **Derivative Investigation Costs** | means reasonable and necessary costs, charges, fees and expenses consented to by the **Insurer** and incurred by the **Organization**, or on behalf of the **Organization** by its board of directors (or the equivalent management body) or any committee of the board of directors (or equivalent management body), in connection with a **Derivative Investigation. Derivative Investigation Costs** shall not include the compensation of any **Insured Person.** |
| **Derivative Suit** | means a lawsuit purportedly brought derivatively on behalf of an **Organization** by a shareholder of such **Organization** against an **Executive** of the **Organization.** |
| **E-Discovery Consultant Services** | means solely the following services performed by an **E-Consultant Firm:** |

(1) assisting the **Insured** with managing and minimizing the internal and external costs associated with the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information **("E-Discovery");**

NOTICE: ... E POLICY FORMS AND THE ... XEMPT FROM THE FILING REQUIREMENTS OF THE NEW ... FORMS AND RATES MUST MEET ... MINIMUM STAND ... TIONS.

*BRANCH*
*Archive Copy*

                              © All rights reserved.

Executive Edge 

(2) assisting the **Insured** in developing or formulating an **E-Discovery** strategy which shall include interviewing qualified and cost effective **E-Discovery** vendors;

(3) serving as project manager, advisor and/or consultant to the **Insured**, defense counsel and the **Insurer** in executing and monitoring the **E-Discovery** strategy; and

(4) such other services provided by the **E-Consultant Firm** that the **Insured, Insurer** and **E-Consultant Firm** agree are reasonable and necessary given the circumstances of the **Securities Claim.**

**Employee**           means any past, present or future employee, other than an **Executive** of an **Organization**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee.

**Employment Practices Claim**           means a Claim alleging any:

(1) **Employment Practices Violation**; or

(2) **Third-Party EPL Violation.**

**Employment Practices Retention**           means the Retention applicable to **Loss** that arises out of an **Employment Practices Claim.**

**Employment Practices Violation**           means any actual or alleged:

(1) wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

(2) harassment (including workplace bullying, sexual harassment whether "quid pro quo", hostile work environment or otherwise);

(3) discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

(4) **Retaliation**;

(5) employment-related misrepresentation(s) to an **Employee** of the **Organization**;

(6) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(7) wrongful failure to employ or promote;

(8) wrongful deprivation of career opportunity with the **Organization**, wrongful demotion or negligent **Employee** evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

(9) wrongful discipline;

(10) failure to grant tenure; or



                                                               © All rights reserved.

Executive Edge



(11) with respect to any of the foregoing items (1) through (10) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights;

but only if the **Employment Practices Violation** relates to an **Employee** of an **Organization** or an **Outside Entity**, or an applicant for employment with an **Organization** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally.

**Enforcement Body**   means: (i) any federal, state, local or foreign law enforcement authority or other governmental investigative authority (including, but not limited to, the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any attorney general), or (ii) the enforcement unit of any securities or commodities exchange or other self-regulatory organization.

**Executive**   means any:

(1) past, present and future duly elected or appointed director, officer, trustee or governor of a corporation, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position);

(2) past, present and future person in a duly elected or appointed position in an entity organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in subparagraph (1) above, or a member of the senior-most executive body (including, but not limited to, a supervisory board); and

(3) past, present and future General Counsel and Risk Manager (or equivalent position) of the **Named Entity.**

**Extradition**   means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

**Extradition Costs**   means **Defense Costs** incurred by an **Insured** in lawfully opposing any effort to obtain the **Extradition** of an **Insured Person.**

**Foreign Jurisdiction**   means any jurisdiction, other than the United States of America or any of its territories or possessions.

**Foreign Policy**   means the standard executive managerial liability policy (including all mandatory endorsements, if any) approved by the **Insurer** or any of its affiliates to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this policy. If more than one such policy exists, then **"Foreign Policy"** means the standard basic policy form most recently offered for sale for comparable risks by the **Insurer** or any of its affiliates in that **Foreign Jurisdiction.** The term **"Foreign Policy"** shall not include any partnership managerial, pension trust or professional liability coverage.

**Insured**   means any:

(1) **Insured Person;** or

(2) **Organization.**



© All rights reserved.

## Executive Edge

| | |
|---|---|
| **Insured Person** | means any: |
| | (1) **Executive** of an **Organization**; |
| | (2) **Employee** of an **Organization**; or |
| | (3) **Outside Entity Executive.** |
| **Insured Person Investigation** | means any civil, criminal, administrative or regulatory investigation of an **Insured Person**: |
| | (1) once the **Insured Person** is identified in writing by an **Enforcement Body** as a target of an investigation that may lead to a criminal, civil, administrative, regulatory or other enforcement proceeding; |
| | (2) in the case of an investigation by the SEC or any state, local or foreign body with similar regulation or enforcement authority, after the service of a subpoena (or in a **Foreign Jurisdiction**, the equivalent legal process) upon the **Insured Person**; or |
| | (3) commenced by the arrest and detainment or incarceration for more than 24 hours of an **Insured Person** by any law enforcement authority in a **Foreign Jurisdiction.** |
| | Writings which may identify an **Insured Person** as a target can include a target or "Wells" letter, whether or not labeled as such. |
| **Liberty Protection Costs** | means: |
| | (1) reasonable and necessary fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** in order for an **Insured Person** to lawfully seek the release of the **Insured Person** from any pre-**Claim** arrest or confinement to a (i) specified residence or (ii) secure custodial premises operated by or on behalf of any law enforcement authority; or |
| | (2) reasonable and necessary premiums (but not collateral) consented to by the **Insurer** and incurred by an **Insured Person** for a bond or other financial instrument to guarantee the contingent obligation of the **Insured Person** for a specified amount required by a court that are incurred or required outside the United States of America during the **Policy Period**, if such premiums: (i) arise out of an actual or alleged **Wrongful Act**, or (ii) are incurred solely by reason of such **Insured Person's** status as an **Executive** or **Employee** of an **Organization**; and, in either case, no **Claim** has been made and no **Pre-Claim Inquiry** is known. |
| **Loss** | means damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), **Defense Costs**, **Crisis Loss**, **Derivative Investigation Costs**, **Liberty Protection Costs** and **Pre-Claim Inquiry Costs**; however, **"Loss"** (other than **Defense Costs**) shall not include: (1) civil or criminal fines or penalties; (2) taxes; (3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; (5) cleanup costs relating to hazardous materials, pollution or product defects; (6) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; and (7) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. Notwithstanding the foregoing subparagraph (7), the **Insurer** shall not assert that, in a **Securities Claim** alleging violations of Section 11 or 12 or 15 of the Securities Act of |

REQUIREMENTS OF THE NEW FORMS AND RATES MUST MEET RATE MINIMUM STANDARD CONDITIONS.

Archive Copy

21                              © All rights reserved.

Executive Edge 

1933, as amended, the portion of any amounts incurred by **Insureds** which is attributable to such violations constitutes uninsurable loss, and, unless precluded from doing so in a court order, shall treat that portion of all such settlements, judgments and **Defense Costs** as constituting **Loss** under this policy.

Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to the Conduct Exclusion): (1) civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B); and (2) solely with respect to **Claims** other than **Employment Practices Claims**, punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages.

In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non-Indemnifiable Loss** in connection therewith.

| | |
|---|---|
| **Management Control** | means: |

(1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or

(2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an **Organization**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

**Non-Indemnifiable Loss** means **Loss** for which an **Organization** has neither indemnified nor is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization.**

**Organization** means:

(1) the **Named Entity**;

(2) each **Subsidary**; and

(3) in the event a bankruptcy proceeding shall be instituted by or against any of the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States of America), if any.

NOTICE:                    E POLICY FORMS AND THE
                           XEMPT FROM THE FILING
REQUIREMENTS OF THE NEW
                           ORMS AND RATES MUST
MEE BRANCH MINIMUM STAND   ITIONS.
Archive Copy

© All rights reserved.

Executive Edge

| | |
|---|---|
| **Outside Entity** | means any: (1) not-for-profit entity; or (2) other entity listed as an **"Outside Entity"** in an endorsement attached to this policy. |
| **Outside Entity Executive** | means any: (1) **Executive** of an **Organization** who is or was acting at the specific request or direction of an **Organization** as an **Executive** of an **Outside Entity**; or (2) any other person listed as an **Outside Entity Executive** in an endorsement attached to this policy. |
| | In the event of a disagreement between the **Organization** and an **Outside Entity Executive** as to whether such **Insured** was acting "at the specific request or direction of the **Organization**," this policy shall abide by the determination of the **Organization** on this issue and such determination shall be made by written notice to the **Insurer** within ninety (90) days after the **Claim** against such **Outside Entity Executive** is made.  In the event no notice of any such determination is given to the **Insurer** within such period, this policy shall apply as if the **Organization** determined that such **Outside Entity Executive** was not acting at the **Organization's** specific request or direction. |
| **Personal Reputation Crisis** | means any negative statement that is included in any press release or published by any print or electronic media outlet regarding an **Executive** of an **Organization** made during the **Policy Period** by any individual authorized to speak on behalf of an **Enforcement Body.** |
| **Personal Reputation Expenses** | means reasonable and necessary fees, costs and expenses of a **Crisis Firm** (as defined in the CrisisFund® Appendix attached to this policy) retained within 30 days of a **Personal Reputation Crisis** solely and exclusively by an **Executive** to mitigate the adverse effects specifically to such **Executive's** reputation from a **Personal Reputation Crisis.**  "**Personal Reputation Expenses**" shall not include any fees, costs or expenses of any **Crisis Firm** incurred by an **Executive** if such **Crisis Firm** is also retained by or on behalf of an **Organization.** |
| **Policy Period** | means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in such Item 2 or the effective date of cancellation of this policy. |
| **Pre-Claim Inquiry** | means any pre-**Claim**: |

(1) verifiable request for an **Insured Person** of any **Organization**: (a) to appear at a meeting or interview; or (b) produce documents that, in either case, concerns the business of that **Organization** or that **Insured Person's** insured capacities, but only if the request came from any:

    (i)   **Enforcement Body**; or

    (ii)  **Organization**, or, on behalf of an **Organization**, by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body):

        (A) arising out of an inquiry or investigation by an **Enforcement Body** concerning the business of that **Organization** or that Insured Person's insured capacities; or

        as part of a **Derivative Investigation**; and



NOTICE: THE APPLICABLE RATES ARE E... REGULATIONS. HOWEVER, ... INSURANCE LAW AND REGUL... YORK INSURANCE LAW AND ...ARDS OF THE NEW YORK BRANCH ...

® All rights reserved.

Executive Edge



(2) arrest or confinement of an **Executive** of an **Organization** to a: (a) specified residence; or (b) secure custodial premises operated by or on behalf of an **Enforcement Body**, in connection with the business of any **Organization** or an **Insured Person's** capacity as an **Executive** or **Employee** of an **Organization.**

**"Pre-Claim Inquiry"** shall not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulated entity, conducted in an **Organization's** and/or **Enforcement Body's** normal review or compliance process.

**Pre-Claim Inquiry Costs**
means the reasonable and necessary pre-**Claim** fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** solely in connection with his/her preparation for and response to a **Pre-Claim Inquiry** directed to such **Insured Person**, including attendance at an interview or meeting requested by an **Enforcement Body**, but excluding (i) any compensation of any **Insured Person**; and (ii) the costs of complying with any formal or informal discovery or other request seeking documents, records or electronic information in the possession or control of an **Organization**, the requestor or any other third party .

**Related Claim**
means a **Claim** alleging, arising out of, based upon or attributable to any facts or **Wrongful Acts** that are the same as or related to those that were either: (i) alleged in another **Claim** made against an **Insured**; or (ii) the subject of a **Pre-Claim Inquiry** received by an **Insured Person.**

**Related Pre-Claim Inquiry**
means a **Pre-Claim Inquiry** involving, arising out of, based upon or attributable to any facts or **Wrongful Acts** that are the same as or related to those that were either: (i) alleged in a **Claim** made against an **Insured**; or (ii) the subject of another **Pre-Claim Inquiry** received by an **Insured Person.**

**Retaliation**
means a retaliatory act of an **Insured** alleged to be in response to any of the following activities: (i) the disclosure or threat of disclosure by an **Employee** of the **Organization** or an **Outside Entity** to a superior or to any governmental agency of any act by an **Insured** which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder; (ii) the actual or attempted exercise by an **Employee** of the **Organization** or an **Outside Entity** of any right that such **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (iii) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or (iv) strikes of an **Employee** of the **Organization** or an **Outside Entity.**



NOTICE:     E POLICY FORMS AND THE
            XEMPT FROM THE FILING
REQUIREMENTS OF THE NEW
            FORMS AND RATES MUST
MEET STATE MINIMUM STAND
Archive Copy            ITIONS.

Executive Edge 

| | |
|---|---|
| **Securities Claim** | means a **Claim**, other than an administrative or regulatory proceeding against, or investigation of an **Organization**, made against an **Insured**: |

(1) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:

    (i) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or

    (ii) brought by a security holder of an **Organization** with respect to such security holder's interest in securities of such **Organization**; or

(2) which is a **Derivative Suit.**

Notwithstanding the foregoing, the term **"Securities Claim"** shall include an administrative or regulatory proceeding against an **Organization** that meets the requirements of subparagraph (1) above, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person.**

**Securities Retention**    means the Retention applicable to **Loss** (including **Pre-Claim Inquiry Costs**) that arises out of (i) a **Securities Claim**, or (ii) **Pre-Claim Inquiry Costs** incurred in response to: (a) a **Pre-Claim Inquiry** by an **Enforcement Body** charged with the regulation of securities, or (b) a **Derivative Investigation.**

**SOX 304 Costs**    means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond) and incurred by the chief executive officer or chief financial officer of the **Named Entity** solely to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002. **SOX 304 Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Executive** pursuant to Section 304(a).

**Subsidiary**    means:

(1) any for-profit entity that is not formed as a partnership of which the **Named Entity** has or had **Management Control** on or before the inception of the **Policy Period** either directly or indirectly through one or more of its other **Subsidiaries**; and

(2) any not-for-profit entity sponsored exclusively by an **Organization.**

A for-profit entity ceases to be a **Subsidiary** when the **Named Entity** no longer maintains **Management Control** of such entity either directly or indirectly through one or more of its **Subsidiaries**. A not-for-profit entity ceases to be a **Subsidiary** when such entity is no longer sponsored exclusively by an **Organization.**



© All rights reserved.

Executive Edge 

| **Third-Party EPL Violation** | means any actual or alleged harassment or unlawful discrimination, as described in subparagraphs (2) and (3) of the definition of **Employment Practices Violation**, or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Insured Person** or applicant for employment with the **Organization** or an **Outside Entity**, including, but not limited to, students, patients, members, customers, vendors and suppliers. |
| --- | --- |

**Transaction**   means:

(1) the **Named Entity** consolidating with or merging into another entity such that the **Named Entity** is not the surviving entity, or selling all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert;

(2) any person or entity or group of persons or entities acting in concert acquiring **Management Control** of the **Named Entity**; or

(3) the appointment by any **Enforcement Body** of, or where any **Enforcement Body** assumes the role of, a trustee, receiver, conservator, rehabilitator, liquidator or similar official to take control of, supervise or oversee the **Named Entity**, or to liquidate or sell all or substantially all of the assets of the **Named Entity.**

**UK Corporate Manslaughter Act Defense Costs**   means **Defense Costs** incurred by an **Insured Person** that result solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Organization** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction.

**Wrongful Act**   means:

(1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act or any actual or alleged **Employment Practices Violation** or **Third-Party EPL Violation:**

(i) with respect to any **Executive** of an **Organization**, by such **Executive** in his or her capacity as such or any matter claimed against such **Executive** solely by reason of his or her status as such;

(ii) with respect to any **Employee** of an **Organization**, by such **Employee** in his or her capacity as such, but solely in regard to any: (a) **Securities Claim**; or (b) other **Claim** so long as such other **Claim** is also made and continuously maintained against an **Executive** of an **Organization**; or

(iii) with respect to any **Outside Entity Executive**, by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such; or

(2) with respect to an **Organization**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Organization**, but solely in regard to a **Securities Claim.**

NOTICE: E POLICY FORMS AND THE XEMPT FROM THE FILING REQUIREMENTS OF THE NEW FORMS AND RATES MUST MEE BRANCH MINIMUM STAND TIONS. Archive Copy

   © All rights reserved.

**PASSPORT STRUCTURE APPENDIX**

This *Passport Structure Appendix* shall only be applicable if the Passport option box has been checked on the Declarations.

The **Insurer** and the **Named Entity** have negotiated this policy to provide *inter alia* that coverage afforded hereunder shall apply anywhere in the world. The **Insurer** and the **Named Entity** have also agreed that to best effectuate application of this policy to **Claims** made outside the United States, certain insurance company affiliates of the **Insurer** will cause to be issued policies in certain **Foreign Jurisdiction(s)** (herein, **"Passport Foreign Underlyer Policies"**; together with this policy, the **"Passport Policies"**), as described in the binder attached, each of which will be subject to its own terms, conditions and exclusions. Accordingly, the **Insurer**, the **Named Entity** and the other **Insureds** agree as follows:

1. For the purpose of determining whether any **Loss** may be payable under this policy in addition to any loss paid under a **Passport Foreign Underlyer Policy**, the **Insurer** shall apply to such **Claim(s)** the terms and conditions of such **Passport Foreign Underlyer Policy** as amended to include those terms and conditions of this policy that are more favorable to the **Insureds** against whom such **Claim** is made, and to the extent not prohibited by applicable law, the **Insurer** will pay to the **Named Entity** the portion of such **Loss** covered solely due to those more favorable terms and conditions in this policy.

2. If any amounts paid to or on behalf of the any of the **Insureds** under the **Passport Policies** cause the aggregate amount paid on all **Passport Policies** to exceed the **Limit of Liability** of this policy for a single policy period, then for all such amounts, the **Named Entity** shall irrevocably and unconditionally indemnify the **Insurer** from and shall pay all such amounts to or as directed by the **Insurer** as a payment obligation directly due from the **Named Entity** as a primary obligor, within ten (10) days from the **Insurer's** written demand.

3. All amounts due from the **Named Entity** under this *Passport Structure Appendix* shall be paid in full, without dispute, set-off, defense, cross-claim or counterclaim and free and clear of any tax, duty or other type of deductions or withholdings. If the **Named Entity** is required by law to make any deduction or withholding, then the amount due from the **Named Entity** shall be increased accordingly.

4. The courts in and for the State of New York, USA shall have exclusive jurisdiction over any disputes arising under this *Passport Structure Appendix* and the City of New York in the State of New York, USA shall be the exclusive venue. The sole remedy of the **Insurer** and the **Named Entity** for breach of the obligations in this *Passport Structure Appendix* shall be an action for breach of only those contractual obligations and appropriate relief therefore. Any breach of the obligations in this *Passport Structure Appendix* shall not be grounds for the **Insurer**, any of its insurance company affiliates or any **Insured** to claim a breach of the policy contract, as a whole, or to alter, avoid, withhold or delay performance of, or to deny the duty to perform, any other obligations in the **Passport Policies.**

NOTICE:
© All rights reserved
REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND
MEET THE MINIMUM STANDARDS OF THE NEW YORK
ArchivalCopy

## CRISISFUND® APPENDIX

### I. DEFINITIONS

(a) **"Crisis"** means:

(1) a **Delisting Crisis**; or

(2) one of the following events which, in the good faith opinion of the Chief Financial Officer of an **Organization** did cause or is reasonably likely to cause a **"Material Effect on an Organization's Common Stock Price"**:

(i) _Negative earning or sales announcement_
The public announcement of an **Organization's** past or future earnings or sales, which is substantially less favorable than any of the following: (i) an **Organization's** prior year's earnings or sales for the same period; (ii) an **Organization's** prior public statements or projections regarding earnings or sales for such period; or (iii) an outside securities analyst's published estimate of an **Organization's** earnings or sales.

(ii) _Loss of a patent, trademark or copyright or major customer or contract_
The public announcement of an unforeseen loss of: (i) an **Organization's** intellectual property rights for a patent, trademark or copyright, other than by expiration; (ii) a major customer or client of an **Organization**; or (iii) a major contract with an **Organization**.

(iii) _Product recall or delay_
The public announcement of the recall of a major product of an **Organization** or the unforeseen delay in the production of a major product of an **Organization**.

(iv) _Mass tort_
The public announcement or accusation that an **Organization** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

(v) _Employee layoffs or loss of key executive officer(s)_
The public announcement of layoffs of **Employees** of an **Organization**. The death or resignation of one or more key **Executives** of the **Named Entity**.

(vi) _Elimination or suspension of dividend_
The public announcement of the elimination or suspension of a regularly scheduled dividend previously being paid by an **Organization**.

(vii) _Write-off of assets_
The public announcement that an **Organization** intends to write off a material amount of its assets.

(viii) _Debt restructuring or default_
The public announcement that an **Organization** has defaulted or intends to default on its debt or intends to engage in a debt restructuring.

(ix) _Bankruptcy_
The public announcement that an **Organization** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of an **Organization**, or that bankruptcy proceedings are imminent, whether voluntary or involuntary.

(x) _Governmental or regulatory litigation_
The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against an **Organization**.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REGULATIONS. HOWEVER, FORMS AND RATES MUST [...] INSURANCE LAW AND REGULATIONS.
Archive Copy

(xi)  _Unsolicited takeover bid_

An unsolicited written offer or bid by any person or entity other than an **Insured** or any affiliate of any **Insured**, whether publicly announced or privately made to an **Executive** of an **Organization**, to effect a **Transaction** of the **Named Entity.**

A **Crisis** shall first commence when an **Organization** or any of its **Executives** shall first become aware of such **Crisis**. A **Crisis** shall conclude once a **Crisis Firm** advises an **Organization** that such **Crisis** no longer exists or when the **CrisisFund** has been exhausted.

(b)  "**Crisis Firm**" means any public relations firm, crisis management firm or law firm on the list of approved firms that is accessible through the online directory at http://www.chartisinsurance.com/panelcounseldirectory under the "CrisisFund®" link. Solely for **Delisting Crises**, "**Crisis Firm**" shall also include any **Panel Counsel** (as defined in Clause 9.B. of the policy) approved to handle **Securities Claims**. Any "**Crisis Firm**" may be hired by an **Organization** to perform **Crisis Services** without further approval by the **Insurer.**

(c)  "**Crisis Loss**" means the following amounts incurred during the pendency of a **Crisis** for which an **Organization** is legally liable:

(1)  the reasonable and necessary fees and expenses incurred by a **Crisis Firm** in the performance of **Crisis Services** for an **Organization**;

(2)  the reasonable and necessary fees and expenses incurred in the printing, advertising or mailing of materials; and

(3)  travel costs incurred by **Executives**, employees or agents of an **Organization** or of the **Crisis Firm**, arising from or in connection with the **Crisis.**

(d)  "**Crisis Services**" means those services performed by a **Crisis Firm** in advising an **Insured** or any **Employee** of an **Organization** on minimizing potential harm to an **Organization** from the **Crisis** (including but not limited to maintaining and restoring investor confidence in an **Organization**), and solely with respect to **Delisting Crisis Loss**, any legal services performed by a **Crisis Firm** in responding to a **Delisting Crisis.**

(e)  "**Delisting Crisis**" means written notice to an **Organization** that such **Organization's** securities will be or have been delisted from an **Exchange** at the initiation of such **Exchange.**

(f)  "**Exchange**" means NASDAQ, the American Stock Exchange, the New York Stock Exchange and the Singapore Exchange.

(g)  "**Material Effect on an Organization's Common Stock Price**" means, within a period of 24 hours, that the price per share of an **Organization's** common stock shall decrease by the greater of $2.00, or 15% net of the percentage change in the Standard & Poor's Composite Index.

## II.  UNDERLINE EXCLUSIONS

The term **Crisis** shall not include any event relating to any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REGULATIONS. HOWEVER, FORMS AND RATES MUST COMPLY WITH INSURANCE LAW AND REGULATIONS.

_Archive Copy_

**ENDORSEMENT# _1_**

This endorsement, effective _12.01am_      _September 30, 2016_      forms a part of policy number   _01-863-24-81_
issued to _AMTRUST FINANCIAL SERVICES, INC._

by      _Illinois National Insurance Company_

**NEW YORK AMENDATORY ENDORSEMENT**

Wherever used in this endorsement: 1) "Insurer" means the insurance company which issued this policy; and 2) "Insured" means the Named Corporation, Named Organization, Named Sponsor, Named Insured, Named Entity or Insured stated in the declarations page;

The policy is hereby amended as follows:

I.    The Cancellation and When We Do Not Renew provisions are deleted and replaced by the following:

(a)    CANCELLATION BY THE INSURED

This policy may be cancelled by the Insured by surrender of this policy to the Insurer or by giving written notice to the Insurer stating when thereafter such cancellation shall be effective. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender.

(b)    CANCELLATION, NONRENEWAL AND CONDITIONAL RENEWAL BY THE INSURER

(i)    If this policy has been in effect for sixty (60) or fewer days when cancellation notice is mailed, and this policy is not a renewal of a policy issued by the Insurer, then this policy may be cancelled by the Insurer by mailing or delivering to the Insured, and to his authorized insurance agent or broker, written notice stating when not less than twenty (20) days thereafter (fifteen (15) days thereafter if cancellation is because of one of the reasons for cancellation set forth in subsection (ii) below) the cancellation shall be effective. Notice of cancellation issued by the Insurer shall specify the grounds for cancellation.

(ii)    If this policy has been in effect for more than sixty (60) days when notice of cancellation is mailed, or if this policy is a renewal of a policy issued by the Insurer, then this policy may be cancelled by the Insurer by mailing or delivering to the Insured, and to his authorized insurance agent or broker, written notice stating when not less than fifteen (15) days thereafter the cancellation shall be effective; however, such cancellation must be based on one or more of the following:

(A)    nonpayment of premium, provided, however, that a notice of cancellation on this ground shall inform the first Named Insured of the amount due;

(B)    conviction of a crime arising out of acts increasing the hazard insured against;

(C)    discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim thereunder;

(D)    after issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current Policy Period;

## ENDORSEMENT# *1*    (continued)

(E)  material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

(F)  required pursuant to a determination by the New York Superintendent of Insurance that continuation of the present premium volume of the Insurer would jeopardize the Insurer's solvency or be hazardous to the interests of Insureds of the Insurer, its creditors or the public;

(G)  a determination by the New York Superintendent of Insurance that the continuation of the policy would violate, or would place the Insurer in violation of, any provision of the New York Insurance Law;

(H)  revocation or suspension of an Insured's license to practice his profession; or

(I)  where the Insurer has reason to believe that there is a probable risk or danger that the Insured will destroy or permit the destruction of the insured property for the purpose of collecting the insurance proceeds, provided, however, that:

(1)  a notice of cancellation on this ground shall inform the Insured in plain language that the Insured must act within ten days if review by the department of the ground for cancellation is desired pursuant to item (3) of this subparagraph (I);

(2)  notice of cancellation on this ground shall be provided simultaneously by the Insurer to the department; and

(3)  upon written request of the Insured made to the department within ten days from the Insured's receipt of notice of cancellation on this ground, the department shall undertake a review of the ground for cancellation to determine whether or not the Insurer has satisfied the criteria for cancellation specified in this subparagraph; if after such review the department finds no sufficient cause for cancellation on this ground, the notice of cancellation on this ground shall be deemed null and void.

Notice of cancellation by the Insurer shall specify the grounds for cancellation.

(iii)

(A)  The Insurer shall mail to the Insured, and to his authorized insurance agent or broker, written notice indicating the Insurer's intention:

(1)  not to renew this policy;

(2)  to condition its renewal upon change of limits, change in type of coverage, reduction of coverage, increased deductible or addition of exclusions or upon increased premiums in excess of ten percent (exclusive of any premium increase generated as a result of increased exposure units or as a result of experience rating, loss rating, retrospective rating or audit.

© All rights reserved
BRANCHive Copy    Page

E POLICY FORMS AND THE
XEMPT FROM THE FILING
AND RATES MUST
END 001
REQUIREMENTS OF THE NEW
MEET THE MINIMUM STAND
TIONS.

2-14176
69898 (9/06)

**ENDORSEMENT#** *1*    (continued)

   (3)   that the policy will not be renewed or will not be renewed upon the same terms, conditions or rates; such alternative renewal notice must be mailed or delivered on a timely basis and advise the Insured that a second notice shall be mailed at a later date indicating the Insurer's intention as specified in subparagraph (1) or (2) of this paragraph (A) and that coverage shall continue on the same terms, conditions and rates as expiring, until the later of the expiration date or sixty (60) days after the second notice is mailed or delivered; such alternative renewal notice also shall advise the insured of the availability of loss information and, upon written request, the request, the insurer shall furnish such loss information within ten (10) days to the insured.

(B)   A nonrenewal notice as specified in subparagraph (1), a conditional renewal notice as specified in subparagraph (2), and the second notice described in subparagraph (3) of paragraph (A) of this subsection (iii) shall contain the specific reason or reasons for nonrenewal or conditional renewal, and set forth the amount of any premium increase and nature of any other proposed changes.

(C)   The notice required by paragraph (A) of this subsection (iii) shall be mailed at least sixty (60) but not more than one hundred twenty (120) days in advance of the end of the Policy Period.

(D)

   (1)   If the Insurer employs an alternative renewal notice as authorized by subparagraph (3) of paragraph (A) of this subsection (iii), the Insurer shall provide coverage on the same terms, conditions, and rates as the expiring policy, until the later of the expiration date or sixty (60) days after the mailing of the second notice described in such subparagraph.

   (2)   Prior to the expiration date of the policy, in the event that an incomplete or late conditional renewal notice or a late nonrenewal notice is provided by the Insurer, the Policy Period shall be extended, at the same terms and conditions as the expiring policy, except that the annual aggregate limit of the expiring policy shall be increased in proportion to the policy extension, and at the lower of the current rates or the prior period's rates, until sixty (60) days after such notice is mailed, unless the Insured elects to cancel sooner.

   (3)   In the event that a late conditional renewal notice or a late nonrenewal notice is provided by the insurer on or after the expiration date of the policy, coverage shall remain in effect on the same terms and conditions of the expiring policy for another required policy period, and at the lower of the current rates or the prior period's rates unless the insured during the additional required policy period has replaced the coverage or elects to cancel, in which event such cancellation shall be on a pro rata premium basis.

(iv)  Nothing herein shall be construed to limit the grounds for which the insurer may lawfully rescind this policy or decline to pay a claim under this policy.

NOTICE: APPLICABLE RATES ARE E
REGULATIONS. HOWEVER,
INSURANCE LAW AND REGU
BRANCHive Copy

YORK INSURANCE LAW AND
RDS OF THE NEW YORK

© All rights reserved.

*2-14176*

69898 (9/06)                    END 001    Page 3 of 4

## ENDORSEMENT# *1*    (continued)

(v)    Notice required herein to be mailed to the Insured shall be mailed to the Insured at the address shown in Item 1 of the Declarations.

Notice required herein to be mailed by the Insurer shall be sent by registered, certified or other first class mail. Delivery of written notice shall be equivalent to mailing.

Proof of mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period shall terminate at the effective date and hour of cancellation or nonrenewal specified in such notice.

(vi)   If this policy shall be cancelled by the Insured, the Insurer shall retain the customary short rate proportion of the premium hereon.

If this policy shall be cancelled by the Insurer, the Insurer shall retain the pro rata proportion of the premium hereon.

Payment or tender of any unearned premium by the Insurer shall not be a condition of cancellation, but such payment shall be made as soon as practicable.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

2-14176

69898 (9/06)

Page 4 of 4

**ENDORSEMENT#** *2*

This endorsement, effective *12.01am      September 30, 2016*      forms a part of
policy number  *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by    *Illinois National Insurance Company*

### NEW YORK CLAIMS-MADE AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy; and 2) "you", "your", or "Insured", means the Named Corporation, Named Organization, Named Sponsor, Named Insured, First Named Insured, Insured's Representative, Insured or equivalent term stated in Item 1 of the Declarations Page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

In consideration of the premium charged, it is hereby understood and agreed that except as otherwise indicated, a Claim will be deemed "first made" for the purposes of this policy when the Insurer receives written notice of the Claim or suit from the Insured, an Other Insured(s) or a third party. A Claim will be also deemed "reported" to the Insurer on the date notice that it is so received. Claims reported to the Insurer alleging the same or related Wrongful Acts shall be considered reported to the Insurer at the time and during the policy period when the first such Claim was reported.

Accordingly, except as indicated below and subject to the policy's other terms and conditions, this policy shall provide coverage for Claims for which notice is first received by the Insurer during the Policy Period (or the Discovery Period, if applicable) even if such Claim was filed against, sent to or delivered to, or received by the Insured or an Other Insured(s) prior to the inception date of this policy. This policy shall not provide coverage for Claims for which notice is first received by the Insurer prior to the inception date of the policy or subsequent to the expiration date of the policy (or the Discovery Period, if applicable.)

Notwithstanding the above, in the event a Claim is filed against, sent or delivered to, or received by the Insured or an Other Insured(s) prior to the inception date of this policy but notice of which is not received by the Insurer until after the inception date of this policy (and prior to the expiration date of the policy or the Discovery Period, if applicable), coverage under this policy shall only apply (subject to the policy's other terms and conditions) only as follows:

(a)    If at the time the Claim was filed against, sent or delivered to, or received by the Insured or an Other Insured(s), there was in existence at that time a valid and collectible management liability policy, providing substantially similar coverage as is provided by this policy, issued to the Insured by the Insurer (or by any other member company of AIG Property Casualty Inc.) of which this policy is a renewal (hereinafter referred to as the "Former Policy"), then

(b)    Coverage shall be afforded under this policy in an amount not greater than the amount of coverage which would have been provided for the Claim under the Former Policy if notice of the Claim had been received by the Insurer during the policy period of such Former Policy. The foregoing sentence may result in (but not be limited to): (1) reducing the limit of liability available for such a

REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

END 002

© All rights reserved.

*2-14176*

75027 (03/00)    *BRANCH*    *Archive Copy*    Page 1 of 2

**ENDORSEMENT# 2**        (continued)

Claim to the available limit of liability applicable to the Former Policy; (2) increasing the applicable retention amount to that retention amount applicable to the Former Policy; or (3) reducing or eliminating coverage due to exclusions or other restrictions appearing in the Former Policy but eliminated, in part or in whole, in this policy. No coverage shall be afforded under this endorsement if there was not in existence a Former Policy at the time the Claim was filed against, sent or delivered to, or received by the Insured or an Other Insured(s).

Nothing in this endorsement shall be construed to provide coverage for Claims notice of which is not received by the Insurer during the Policy Period of this policy (or the Discovery Period, if applicable). Further, the Insured or the Other Insured(s)s shall, as a condition precedent to the obligations of the Insurer under this endorsement, give written notice to the Insurer as soon as practicable after receiving a Claim or becoming aware that a Claim has been filed against or sent or delivered to the Insured or an Other Insured(s).

Nothing in this endorsement shall be construed to limit the rights of the Insurer under the clause in the policy entitled, DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (or any other clause bearing a similar title and addressing the same issues), as respects the defense and settlement of a Claim.

Nothing in this endorsement shall be construed to provide coverage for a Claim under the Former Policy, nor shall this endorsement ever result in providing coverage under this policy for Loss for which coverage is in fact provided (or would be provided but for the exhaustion of the limit of liability) under the Former Policy.

The Insurer's limit of liability for Claims as described in this endorsement shall be part of and not in addition to the Limit of Liability stated on the Declarations page of this policy for all Claims under this policy and nothing in this endorsement shall be construed to increase the Insurer's limit of liability as therein stated.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

AUTHORIZED REPRESENTATIVE

**2-14176**

75027 (03/00)

© All rights reserved.

**END 002**

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REGULATIONS. HOWEVER, FORMS AND RATES MUST INSURANCE LAW AND REGULATIONS.

**ENDORSEMENT#** *3*

This endorsement, effective *12.01am       September 30, 2016*      forms a part of
policy number   *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by     *Illinois National Insurance Company*

**NEW YORK AMENDATORY ENDORSEMENT - DISCOVERY CLAUSE**

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy; and 2) "you", "your", or "Insured", means the Named Corporation, Named Organization, Named Sponsor, Named Insured, First Named Insured, Insured's Representative, Insured or equivalent term stated in Item 1 of the Declarations Page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy. 4) "Discovery Period" or "Extended Reporting Period" means both the Automatic Discovery Period and the Optional Discovery Period described in this endorsement.

In consideration of the premium charged, it is hereby understood and agreed that the policy is hereby amended as follows:

I.

The policy Clause labeled "DISCOVERY PERIOD," or "EXTENDED REPORTING PERIOD," to the extent applicable, is amended as follows:

Solely in regard to this endorsement the following definitions shall apply:

1)     "Termination of Coverage" means: (1) cancellation or non-renewal of this policy by the Insurer or the Insured; or (2) decrease in the limit of liability, reduction of coverage, increased deductible or self-insured retention, new exclusion, or any other change in coverage less favorable to the Insureds.

2)     "Public Entity" means a Public Entity as defined in section 107(a)(51) of the New York Insurance Law.

Upon Termination of Coverage afforded by this policy, and only to the extent coverage is terminated, the Insured shall have the right to an Automatic Discovery Period or an Optional Discovery Period as follows:

1)     AUTOMATIC DISCOVERY PERIOD

There shall be a period of sixty (60) days (ninety (90) days if the Insured is a Public Entity) following the effective date of such Termination of Coverage (herein referred to as the Automatic Discovery Period) in which to give written notice to the Insurer of a Claims first made against the Insureds during said sixty (60) (or ninety (90) day) period for any Wrongful Act occurring prior to such Termination of Coverage and otherwise covered by this policy. The Automatic Discovery Period shall be void ab initio if the Optional Discovery Period becomes effective.



**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REGULATIONS. HOWEVER, FORMS AND RATES MUST INSURANCE LAW AND REGULATIONS.

© All rights reserved

*END 003*

**ENDORSEMENT#** *3*    (continued)

2)    OPTIONAL DISCOVERY PERIOD

The Insured shall have the right, upon payment of the required additional premium, less any return premium owed because of Termination of Coverage, plus any premium for the Policy Period which is owed and not yet paid, to a period of one year following the effective date of Termination of Coverage (herein referred to as the Optional Discovery Period) in which to give written notice to the Insurer of Claims first made against the Insured during said one year period for any Wrongful Act occurring prior to such Termination of Coverage and otherwise covered by this policy.

The right to an Optional Discovery Period shall terminate, however, unless written notice of such election together with payment of the required additional premium due, less any return premium owed because of cancellation of this policy, plus any premium for the Policy Period which is owed and not yet paid, is received by the Insurer not later than the later of: (1) sixty (60) days after the effective date of Termination of Coverage; or (2) thirty (30) days after the Insurer has mailed or delivered to the Insured a written advice of the amount of the required additional premium, if the Insurer is obligated to give such written advice.

The required additional premium for the one year Optional Discovery Period shall be the lesser of the amount stated in the policy or *125* % of the "Full Annual Premium". Full Annual Premium means the premium level in effect immediately prior to the end of the Policy Period.

Not later than thirty (30) days after the effective date of Termination of Coverage, the Insurer shall mail or deliver to the Insured a written advice of the amount of the required additional premium; however, if this policy is canceled by the Insurer due to non-payment of premium or fraud on the part of any Insureds, the Insurer shall not be required to provide such a premium quotation unless requested by the Insured.

If coverage is terminated by the Insurer because of non-payment of premium or fraud, and at the effective date of such Termination of Coverage the Insurer has provided this insurance to the Company and the Insureds on a claims-made basis without interruption for less than one year, there shall be no right to elect and purchase an Optional Discovery Period. For purposes of this paragraph, Discovery Period coverage shall not be considered as time when the Insurer was providing this coverage.

Any Other Insured(s) shall have the right to purchase the Optional Discovery Period to the extent of Termination of Coverage as respects only himself, if: (i) the Insured has been placed in liquidation or bankruptcy or permanently ceases operations; and (ii) the Insured or designated trustee does not purchase the Optional Discovery Period; and (iii) within one hundred twenty (120) days of the Termination of Coverage the Insurer has received from such Other Insured a written request for such Optional Discovery Period coverage. If such Other Insured does not pay the required additional premium when due, then such Optional Discovery Period shall be void ab initio.

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REGULATIONS. HOWEVER, FORMS AND RATES MUST ... INSURANCE LAW AND REGULATIONS.

© All rights reserved

**END 003**

ENDORSEMENT#  *3*    (continued)

3)  OTHER PROVISIONS

The additional premium for the Discovery Period or Optional Discovery Period shall be fully earned at the inception of the Discovery Period or Optional Discovery Period. The Discovery Period or Optional Discovery Period is not cancelable except for non-payment of premium. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

## II.

The following provisions are hereby added to the policy:

- **NOTICE TO AGENT**: Notice given by or on behalf of the Insured, or written notice by or on behalf of the injured party or any other claimant, to any licensed agent of the Insurer in the state of New York, with particulars sufficient to identify the Insured, shall be deemed notice to the Insurer.

- **INSOLVENCY/BANKRUPTCY OF INSURED**: The insolvency or bankruptcy of the Insured shall not relieve the Insurer of its obligations under this Policy as long as all Policy requirements are met by Insured, its trustee or receiver in bankruptcy. Should a judgement be rendered against an insolvent or bankrupt Insured, the Insurer shall be liable for the amount of such judgement not to exceed the applicable limit of liability under this Policy.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN UNCHANGED.**

AUTHORIZED REPRESENTATIVE

© All rights reserved.

REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND
MEET THE MINIMUM STANDARDS OF THE NEW YORK

*2-14176*

75030 (7/02)

BRANCHive Copy

END 003

Page 3 of 3

**ENDORSEMENT# *4***

This endorsement, effective *12.01am*    *September 30, 2016*    forms a part of
policy number   *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by    *Illinois National Insurance Company*

**NEW YORK RETENTION/COINSURANCE ENDORSEMENT**

Wherever used in this endorsement: 1) "Insurer" mean the insurance company which issued this policy; and 2) "Company", means the Named Corporation, Named Organization, Named Entity, Named Sponsor, Named Insured, First Named Insured, Insured's Representative, Insured or equivalent term stated in Item 1 of the Declarations Page.

In consideration of the premium charged, it is hereby understood and agreed that the policy is hereby amended as follows:

I.

(1)  The Retention section of the Declarations and the Retention Clause of the policy are hereby amended to include the following additional Retention amounts in accordance with the New York Regulation 110. The additional Retention amounts are to be applicable solely to Non-Indemnifiable Loss.

**ADDITIONAL RETENTION AMOUNTS**

(a)  $[see chart below]    subject to the aggregate listed in item (b) below

(natural person Insured's retention)

(b)  $[see chart below]    for all Non-Indemnifiable Loss arising from Claims

(aggregate retention)    alleging the same Wrongful Act or related Wrongful Acts.

Each natural person Insured's individual maximum retention amount and the total per Claim aggregate maximum retention amount shall be determined in accordance with the New York Regulation 110 Non-Indemnifiable Loss Retention Chart below on the basis of the total consolidated assets of the Company at the time the Claim was first made against the natural person Insured.

**NEW YORK REGULATION 110 NON-INDEMNIFIABLE LOSS RETENTION CHART**

| Corporation's Assets | Natural Person Insured's Retention | Aggregate Retention |
|---|---|---|
| Greater than $20,000,000 | $5,000 | $50,000 |
| Greater than $10,000,000 to $20,000,000 | $4,000 | $40,000 |
| Greater than $5,000,000 to $10,000,000 | $3,000 | $30,000 |
| $5,000,000 or less | $2,000 | $20,000 |
| Not For Profit Entities | $100 | $1,000 |

© All rights reserved.

REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER THESE AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**END 004**

**2-14176**

76812 (5/06)    BP ARCHIVE Copy    Page 1 of 2

**ENDORSEMENT# _4_**   (continued)

(2)   In accordance with section I.(1) of this endorsement, the Insurer shall only be liable for the amount of Non- Indemnifiable Loss arising from a Claim which is in excess of the applicable Retention amount stated in the Retention Chart above, such Retention amount to be borne by the natural person Insureds and shall remain uninsured.

(3)   The Retention Clause contained in the policy is further amended by the addition of the following provisions:

▪   As respects the retention applicable to Non- Indemnifiable Loss, in cases where the maximum retention applies, the retention shall then be prorated among the Insureds in proportion to their respective Loss. Notwithstanding the forgoing, in no event shall the retention per natural person Insured for Non- Indemnifiable Loss be less than 75% of the retention amount listed above per natural person Insured in (a).

**II.**

The policy is amended to include the following COINSURANCE CLAUSE:

▪   Solely with regard to Non- Indemnifiable Loss, the Insurer shall be liable to pay the "Regulated Coinsurance Percentage" of the first $1,000,000 of Non- Indemnifiable Loss, and 100% of Non- Indemnifiable Loss excess of the first $1,000,000 of such Loss, (subject to the policies terms, conditions and exclusions) excess of any applicable retention amount, if any, described in the policy, and subject to the Limit of Liability described in the policy. The "Regulated Coinsurance Percentage" will be determined in accordance with the New York Regulation 110 Non- Indemnifiable Loss Coinsurance Chart below on the bases of the total consolidated assets of the Company at the time the Claim was first made against the natural person Insured.

**NEW YORK REGULATION 110 NON- INDEMNIFIABLE LOSS COINSURANCE CHART**

| Corporation's Assets | Regulated Coinsurance Percentage |
|---|---|
| Greater than $20,000,000 | 99.5% |
| Greater than $10,000,000 to $20,000,000 | 99.6% |
| Greater than $5,000,000 to $10,000,000 | 99.7% |
| $5,000,000 or less | 99.8% |
| Not For Profit Entities | 99.9% |

**III.**

Solely for the purposes of this endorsement the term "Non- Indemnifiable Loss" means Loss for which the Company has not indemnified nor is permitted or required to indemnify a natural person Insured pursuant to law or contract or the charter, bylaws, operating agreement or similar document of a Company.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

© All rights reserved

BP ARCHIVE COPY

**2-14176**

76812 (5/06)

END 004

Page 5 of 5

ENDORSEMENT# *5*

This endorsement, effective *12.01am*        *September 30, 2016*        forms a part of
policy number   *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by      *Illinois National Insurance Company*

### NEW YORK AMENDATORY ENDORSEMENT - NY STATUTE 3420

Wherever used in this endorsement: 1) "we", "us", "our" and "Insurer" mean the insurance company which issued this policy; 2) "you", "your", "Insured" and "first Named Insured" mean the Named Corporation, Named Entity, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; 3) "other insured(s)" means all other persons or entities afforded coverage under the policy; 4) "Discovery Period" means Discovery Period or Extended Reporting Period, as defined in the policy; and 5) "Claim" means Claim or Suit as defined in the policy.

It is hereby understood and agreed that the policy is amended as follows:

A.    The following provisions are hereby added to the policy:

**FAILURE TO GIVE NOTICE WITHIN PRESCRIBED TIME:**

Failure to give any notice required to be given by this policy, or any policy of which this is a renewal, within the prescribed time shall not invalidate any Claim made against an Insured if:

(a)    it shall be shown not to have been reasonably possible to give notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter; or

(b)    the failure to provide timely notice has not prejudiced the Insurer.

Any such Claim shall be deemed to have been first made against the Insured and noticed to the Insurer within the Policy Period or Discovery Period of the policy issued by the Insurer (the "Noticed Policy") in which the Insurer received notice of the Claim; provided that the coverage afforded with respect to the Noticed Policy shall be in an amount <u>not greater than</u> the amount of coverage afforded with respect to the Policy Period of the policy issued by the Insurer (the "Former Policy") in which the Claim was actually first made against the Insured. The foregoing sentence may result in (but not be limited to): (1) reducing the limit of liability available for such a Claim to the available limit of liability applicable to the Former Policy; (2) increasing the applicable retention amount to that retention amount applicable to the Former Policy; or (3) reducing or eliminating coverage due to exclusions or other restrictions appearing in the Former Policy but eliminated, in part or in whole, in the Noticed Policy. No coverage shall be afforded under this endorsement if there was not in existence a Former Policy at the time the Claim was actually first made against the Insured.

With respect to subsection (b) above, any such Claim must be noticed during the Policy Period or Discovery Period of a Noticed Policy which is a renewal or extension of the Former Policy.

Nothing in this endorsement shall be construed to provide coverage for a Claim noticed in more than one Policy Period or Discovery Period.

**NOTICE:** APPLICABLE RATES ARE E
PREJUDICE:
© All rights reserved.
**YORK INSURANCE LAW AND**
END 005 **AND RATES MUST**
ARE S OF THE NEW YORK
Page **TIONS.**
BRANCHive Copy

*2-14176*
83231 (1/09)

**ENDORSEMENT#** *5*    (continued)

In the event that the Insurer alleges that it was prejudiced as a result of a failure to give notice within the time required under the policy, the burden of proof shall be on:

(a)    the Insurer to prove that it has been prejudiced, if the notice was provided within two years of the time required under the policy; or

(b)    the Insured to prove that the Insurer has not been prejudiced, if the notice was provided more than two years after the time required under the policy.

The Insurer's rights shall not be deemed prejudiced unless the failure to timely provide notice materially impairs the ability of the Insurer to investigate or defend the Claim.

Notwithstanding the above, an irrebuttable presumption of prejudice shall apply if, prior to the notice, the Insured's liability has been determined by a court of competent jurisdiction or by a binding arbitration; or if the Insured has resolved the Claim by settlement or other compromise.

**NOTICE TO AGENT:**

Notice given by or on behalf of the Insured, or written notice by or on behalf of the injured party or any other claimant, to any licensed agent of the Insurer in the state of New York, with particulars sufficient to identify the Insured, shall be deemed notice to the Insurer.

**INSOLVENCY/BANKRUPTCY OF INSURED:**

The insolvency or bankruptcy of the Insured shall not relieve the Insurer of its obligations under this policy as long as all policy requirements are met by Insured, its trustee or receiver in bankruptcy. Should a covered judgment be rendered against an insolvent or bankrupt Insured, the Insurer shall be liable for the amount of such judgment not to exceed the applicable limit of liability under this policy.

B.    The Clause entitled, **"Action Against Us"** or **"Action Against Company"** is deleted in its entirety and replaced with the following:

No one may bring an action against us unless there has been full compliance with all the terms of this policy and the amount of the Insured's obligation to pay has been finally determined either by:

1.    judgment against the Insured which remains unsatisfied at the expiration of thirty (30) days from the service of notice of entry of the judgment upon the Insured and upon us; or

2.    written agreement of the Insured, the claimant and us.

Any person or organization or legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. We may not be impleaded by the Insured or its legal representative in any legal action brought against the Insured by any person or organization.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

© All rights reserved.

*2-14176*

83231 (1/09)

**ENDORSEMENT#** *6*

This endorsement, effective *12.01am*       *September 30, 2016*      forms a part of
policy number  *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*


by    *Illinois National Insurance Company*

### NOTICE AND REPORTING AMENDED
### 90-DAY POST POLICY REPORTING PERIOD

In consideration of the premium charged, it is hereby understood and agreed that Clause
7.(a) *Reporting a Claim, Pre-Claim Inquiry or Crisis* is amended by deleting the last
sentence thereof and replacing it with the following:

> In all such events, notification must be provided no later than 90 days after the end
> of the **Policy Period** or the **Discovery Period** (if applicable).


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*2-14176*

**NOTICE:** THES...
APPLICABLE RATES ARE E...
REGULATIONS. HOWEVER, ...INSURANCE LAW AND
...ARDS OF THE NEW YORK

© All rights reserved.

*END 006*

108598 (4/...

ENDORSEMENT# *7*

This endorsement, effective *12.01am*    *September 30, 2016*    forms a part of
policy number   *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*


by    *Illinois National Insurance Company*


## ENTITY V. INSURED EXCLUSION AMENDED
## WHISTLEBLOWER CARVEBACK

In consideration of the premium charged, it is hereby understood and agreed that Clause
4.B.(5) *Entity v. Insured Exclusion* is amended by adding the following to the end thereof:

> With respect to this *Entity v. Insured Exclusion*, the term "materially assisted" shall
> not be triggered by any **Insured Person** engaging in protected "whistleblower"
> activity.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

NOTICE:    THE POLICY FORMS AND THE
REQUIREMENTS OF THE NEW    EXEMPT FROM THE FILING
                           FORMS AND RATES MUST
MEET THE MINIMUM STAND
ARD PROV    REGULATIONS.

© All rights reserved

*2-14176*

*END 007*

106824 (9/10)

**ENDORSEMENT#** *8*

This endorsement, effective *12.01am*    *September 30, 2016*    forms a part of
policy number   *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by   *Illinois National Insurance Company*

**ENTITY V. INSURED EXCLUSION AMENDED**
**CARVEBACKS A & B**
**DELETE "IN DEFENDING ANY CLAIM AGAINST THAT INSURED PERSON"**
**WHISTLEBLOWER CARVEBACK**

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.B.(5) *Entity v. Insured Exclusion* is amended by deleting subparagraphs (a) and (b) in their entirety and replacing them with the following:

    (a) to any **Defense Costs** which constitute **Non-Indemnifiable Loss** incurred by any **Insured Person**;

    (b) to any **Derivative Suit** not brought, controlled or materially assisted by any **Organization**, any **Outside Entity** or any **Executive** of the foregoing; provided that the term "materially assisted" shall not be triggered by any **Insured Person** engaging in protected "whistleblower" activity; or

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*2-14176*

© All rights reserved.
NOTICE: THESE... APPLICABLE RATES ARE... REGULATIONS. HOWEVER, ... YORK INSURANCE LAW AND ...ARDS OF THE NEW YORK ...INSURANCE LAW AND REGUL...
108596 (4/... END 008

ENDORSEMENT# *9*

This endorsement, effective  *12.01am*     *September 30, 2016*    forms a part of
policy number   *01-863-24-81*
issued to   *AMTRUST FINANCIAL SERVICES, INC.*

by    *Illinois National Insurance Company*

## ENTITY V. INSURED EXCLUSION AMENDED
## AMEND CARVEBACK C FOR BANKRUPTCY CONSTITUENCIES

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.B.(5) *Entity v. Insured Exclusion* is amended by deleting subparagraph (c) in its entirety and replacing it with the following:

(c) if the **Organization** or **Outside Entity** is the subject of a bankruptcy case (or the equivalent in a **Foreign Jurisdiction**), any **Claim** brought by the examiner, trustee, receiver, liquidator, rehabilitator, creditors committee, bondholder committee, equity committee or any other creditor or group of creditors on behalf of or in the right of such **Organization** or **Outside Entity** (or the resulting debtor-in-possession);

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*2-14176*

NOTICE:

REQUIREMENTS OF THE NEW YORK INSURANCE DEPARTMENT

MEET THE MINIMUM STANDARDS OF THE NEW YORK

© All rights reserved

107187 (11/10) *BRANCH*        *END 9*
*Archive Copy*

ENDORSEMENT# *10*

This endorsement, effective at *12.01am      September 30, 2016*  forms a part of
Policy number *01-863-24-81*
Issued to: *AMTRUST FINANCIAL SERVICES, INC.*

By: *Illinois National Insurance Company*

## ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

Coverage shall only be provided and payment of loss under this policy shall only be made in full compliance with enforceable United Nations economic and trade sanctions and the trade and economic sanction laws or regulations of the European Union and the United States of America, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

**2-14176**
119679 (9/15)

REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND
MEET THE MINIMUM STANDARDS OF THE NEW YORK
*ArcBranch*y     **END 010**     Page 1 of 1

## ENDORSEMENT# *11*

This endorsement, effective *12.01am*    *September 30, 2016*    forms a part of
policy number    *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by    *Illinois National Insurance Company*

### SEVERABILITY OF EXCLUSIONS AMENDED
### TOP 3 OF NAMED ENTITY

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.A. *Full Severability of Exclusions For Insured Persons* is deleted in its entirety and replaced with the following:

A. *Full Severability of Exclusions for Insured Persons*

In determining whether any of the following Exclusions apply, the **Wrongful Acts** of any **Insured Person** shall not be imputed to any other **Insured**. For Insuring Agreement C. *Organization Coverage*, only the **Wrongful Acts** of any chief executive officer, chief financial officer or general counsel (or equivalent position) of the **Named Entity** shall be imputed to an **Organization.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

NOTICE: THES...
APPLICABLE RATES ARE E...
REGULATIONS. HOWEVER, ...
...ARDS OF THE NEW YORK
INSURANCE LAW AND REGUL...
© All rights reserved.
...YORK INSURANCE LAW AND
*END 011*

2-14176

108606 (4/...)

ENDORSEMENT# *12*

This endorsement, effective *12.01am*     *September 30, 2016*     forms a part of
policy number   *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by     *Illinois National Insurance Company*

**SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT
OR ACT EXCLUSION**

In consideration of the premium charged, it is hereby understood and agreed that, without
limiting the effectiveness of Clause 4. EXCLUSIONS, Exclusion (2) of the policy, the
**Insurer** shall not be liable to make any payment for **Loss** in connection with: (i) any of the
**Claim(s)**, notices, events, investigations or actions listed under EVENTS below (hereinafter
**"Events"**); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense
of: (a) any **Event(s)**; or (b) any **Claim(s)** arising from any **Event(s)**; or (iii) any **Wrongful Act**,
underlying facts, circumstances, acts or omissions in any way relating to any   **Event(s).**

<u>EVENTS</u>

1. *Derivative Action Listed in 10K filed on 3/15/2009*

It is further understood and agreed that the **Insurer** shall not be liable for any **Loss** in
connection with:

(A)    any restatement, retraction, amendment or revision of in part or in whole:

   (i)    any document or statement filed or submitted or required to be filed or
          submitted with the Securities and Exchange Commission or any other similar
          federal, state or local agency (including but not limited to any 10K's, 10Q's
          or annual reports); or

   (ii)   any written or oral statement made regarding the assets, revenues, sales or
          financial condition of the **Organization,**

resulting from, arising out, based upon or attributable to any **Event** or the resolution
of said **Events;** and

2-14176

104143 (4/

**ENDORSEMENT#** *12*    (continued)

(B)    any **Claim** alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to an **Interrelated Wrongful Act** (as that term is defined below), regardless of whether or not such **Claim** involved the same or different **Insureds**, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

For the purposes of this endorsement an **"Interrelated Wrongful Act"** means: (i) any fact, circumstance, act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is the same as, similar or related to or a repetition of any **Wrongful Act** alleged in any **Event(s).**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

2-14176

*END 012*

104143 (4/10)

NOTICE:    E POLICY FORMS AND THE
XEMPT FROM THE FILING
REQUIREMENTS OF THE NEW    AND RATES MUST
MEET THE MINIMUM STAND
Archive Copy    TIONS.

ENDORSEMENT# *13*

This endorsement, effective *12.01am        September 30, 2016*    forms a part of
policy number   *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by    *Illinois National Insurance Company*

**PROFESSIONAL ERRORS & OMISSIONS EXCLUSION
(WITH SECURITIES CLAIM CARVE-OUT)**

In consideration of the premium charged, it is hereby understood and agreed that the
**Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim**
made against any **Insured** alleging, arising out of, based upon or attributable to the
**Organization's** or any **Insured's** performance of or failure to perform professional services
for others, or any acts, errors or omissions relating thereto.

Notwithstanding the foregoing, it is further understood and agreed that this endorsement
shall not apply to any **Securities Claim**, provided that such **Securities Claim** is instigated
and continued totally independent of, and totally without the solicitation of, or assistance
of, or active participation of, or intervention of, the  **Organization** or any **Insured.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*2-14176*

*END 013*

104141 (4/10)

NOTICE: ... E POLICY FORMS AND THE ... XEMPT FROM THE FILING
REQUIREMENTS OF THE NEW ... AWS AND RATES MUST
MEET THE MINIMUM STAND ...
ArBRYANCbby ... TIONS.

**ENDORSEMENT# *14***

This endorsement, effective *12.01am    September 30, 2016*    forms a part of policy number *01-863-24-81*
issued to    *AMTRUST FINANCIAL SERVICES, INC.*

by    *Illinois National Insurance Company*

### PROFESSIONAL ERRORS & OMISSIONS EXCLUSION
### (WITH A-SIDE CARVE OUT) - EXCESS OF OTHER INSURANCE

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** alleging, arising out of, based upon or attributable to the **Organization's** or any **Insured's** performance of or failure to perform professional services for others, or any acts, errors or omissions relating thereto; provided, however, this exclusion shall not apply to **Non-Indemnifiable Loss** not otherwise covered by the below listed policies, including any renewals or replacements thereof.

### POLICIES

1. Insurance Company Professional Liability Insurance Policy (Broad Form), policy number 01-2777-74-20 issued by Chartis Specialty Insurance Company to Amtrust Financial Services for the policy period from 07/30/2013 to 07/01/2014
2. Excess Liability, policy number FL5EE00144131 issued by Everest National Insurance Company to Amtrust Financial Services for the policy period from 07/30/2013 to 07/01/2014

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*2-14176*

MNSCPT

NOTICE:
REQUIREMENTS OF THE NEW YORK INSURANCE DEPARTMENT
MEET THE MINIMUM STANDARDS OF THE NEW YORK

© All rights reserved
AUTHORIZED REPRESENTATIVE

*BRANCH    END 14*
*Archive Copy*

**ENDORSEMENT# *15***

This endorsement, effective *12.01am*     *September 30, 2016*     forms a part of
policy number   *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by     *Illinois National Insurance Company*

**EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION
WITH SUBLIMIT OF LIABILITY**

In consideration of the additional premium of  , it is hereby understood and agreed that the term **"Executive"** is amended to include any **"Employed Lawyer,"** but only for **Wrongful Acts** (as defined below) in such **Employed Lawyer's** capacity as such, subject to the terms, conditions and limitations of the policy and this endorsement.

Solely for the purposes of the extension of coverage provided by this endorsement, the term **"Wrongful Act"** means any act, error or omission of an **Employed Lawyer**, in the rendering or failure to render professional legal services for the **Organization**, but solely in his or her capacity as such.  Provided, however, the term **"Wrongful Act"** shall not mean any act, error or omission in connection with any activities by such **Employed Lawyer**: (1) which are not related to such **Employed Lawyer's** employment with the **Organization**; (2) which are not rendered on behalf of the **Organization** at the **Organization's** written request; or (3) which are performed by the **Employed Lawyer** for others for a fee.

It is further understood and agreed that solely with respect to the coverage as is afforded by virtue of this endorsement, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim**(s) made against an **Employed Lawyer**:

    (a)    alleging, arising out of, based upon or attributable to any **Wrongful Act** occurring at a time when the **Employed Lawyer** was not employed as a lawyer by the **Organization**;

    (b)    alleging, arising out of, based upon or attributable to any **Wrongful Act**, if as of the **Continuity Date**, an **Employed Lawyer** knew or could have reasonably foreseen that such **Wrongful Act** could give rise to a **Claim**; or

    (c)    alleging, arising out of, based upon or attributable to any activities by an **Employed Lawyer** as an officer or director of any entity other than the **Organization**.

It is further understood and agreed that for the purpose of the applicability of the coverage provided by this endorsement, the **Organization** will be conclusively deemed to have indemnified the **Employed Lawyer** to the extent that the **Organization** is permitted or required to indemnify him or her pursuant to law, common or statutory, or contract, or the charter or by-laws of the **Organization** (which are hereby deemed to adopt the broadest provisions of the law which determines and defines such rights of indemnity). The **Organization** hereby agrees to indemnify the **Employed Lawyer** to the fullest extent permitted by law including the making in good faith of any required application for court approval and the passing of any corporate resolution or the execution of any contract.

It is further understood and agreed that coverage as is afforded under this endorsement shall apply to a Wrongful Act of an **Employed Lawyer** only if one or more **Insured Person(s)** (other than an Employed Lawyer) are and remain co-defendants in the action along with an Employed Lawyer.

**NOTICE**

APPLICABLE RATES ARE E

© All rights reserved

**YORK INSURANCE LAW AND FORMS AND RATES MUST OF THE NEW YORK**

*ENDORS15*

THESE

*BRANCHive Copy*

*2-14176*

104938 (4/10)     Page

<u>ENDORSEMENT#</u> *15*    (continued)

It is further understood and agreed that the coverage provided by this endorsement is specifically excess over any other valid and collectible lawyers professional insurance, legal malpractice or errors and omissions insurance and shall only drop down and be primary insurance only in the event of exhaustion of such other insurance due to losses paid thereunder.

The term "**Employed Lawyer**" means any employee of the **Organization** who is admitted to practice law and who is employed, or was employed, at the time of the alleged **Wrongful Act** as a lawyer full time for and salaried by the **Organization**.

Solely for the purposes of the coverage provided by this endorsement the term "**Continuity Date**" means for each **Employed Lawyer** the later of *July 1, 2004* or the first date such person became an **Employed Lawyer** for the **Organization**.

Solely in regard to the coverage provided by this endorsement, the maximum limit of the **Insurer's** liability for all **Loss** in the aggregate arising from all **Claims** combined shall be *$1,000,000* (hereinafter the "**Sublimit of Liability**"). This **Sublimit of Liability** shall be part of and not in addition to the aggregate **Limit of Liability** stated in the Declarations and will in no way serve to increase the **Insurer's** Limit of Liability as therein stated.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

NOTICE: THESE APPLICABLE RATES ARE E REGULATIONS. © All rights reserved. YORK INSURANCE LAW AND RROS OF THE NEW YORK

**2-14176**

104938 (4/10)    Page 2 of 2

ENDORSEMENT# *16*

This endorsement, effective *12.01am    September 30, 2016*   forms a part of
policy number   *01-863-24-81*
issued to   *AMTRUST FINANCIAL SERVICES, INC.*

by   *Illinois National Insurance Company*

## CLAIM DEFINITION AMENDED
## REQUESTS TO TOLL STATUTE OF LIMITATIONS

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1. In Clause 13. DEFINITIONS,  the definition of  " **Claim**" shall be amended by adding the
   following subparagraph (6) as follows:

   (6)      the receipt by an **Insured** of any written request  to toll a period or statute of
            limitations which may be applicable  to any  **Claim** that may  be made for any
            **Wrongful Act** of any **Insured.**

2. In Clause 7. NOTICE AND  REPORTING, the last sentence of  subparagraph (c), entitled
   " *Relation Back to Reported Circumstances Which May Give Rise to a Claim* ," is deleted
   and replaced with the following:

   In order to be effective, notification of circumstances must specify the facts,
   circumstances, nature of the alleged Wrongful Act anticipated and reasons for
   anticipating such Claim, with full particulars as to dates, persons and entities
   involved.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*2-14176*

NOTICE:

REQUIREMENTS OF THE NEW YORK INSURANCE DEPARTMENT
MEET THE MINIMUM STANDARDS OF THE NEW YORK

© All rights reserved

AUTHORIZED REPRESENTATIVE

106013 (07/10) *BRANCH            END 16*
*Archive Copy*

**ENDORSEMENT#** *17*

This endorsement, effective *12.01am*    *September 30, 2016*    forms a part of
policy number   *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by    *Illinois National Insurance Company*

### STATE AMENDATORY INCONSISTENT

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.  In the event that there is an inconsistency between any: (a) state amendatory attached to this policy, or any other wording attached to this policy to comply with applicable law; and (b) any other term, condition or limitation of this policy; then, to the extent permitted by law, subject to the limitations below, the Insurer will resolve the inconsistency by applying the terms, conditions or limitations that are more favorable to the policyholder.

2.  This endorsement shall not apply to the extent that: (a) any state amendatory or other wording expressly limits coverage in order to comply with applicable law, or (b) any such amendatory or other compliance wording amends language applicable to premium. In such events, the state amendatory or other compliance wording will govern over any other term, condition or limitation of the policy.

3.  "Policyholder" means the first Named Entity, Named Organization, Named Corporation, Named Sponsor, Named Insured or other policyholder designated in Item 1 of the Declarations of this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 017*

*2-14176*

94039 (5/07)    *BRANCH*    Page 1 of 1

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REGULATIONS. HOWEVER, FORMS AND RATES MUST INSURANCE LAW AND REGULATIONS.

**ENDORSEMENT#** *18*

This endorsement, effective *12.01am*    *September 30, 2016*    forms a part of
policy number  *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by  *Illinois National Insurance Company*

### SECURITIES CLAIM DEFINITION - COMMON LAW

In consideration of the premium charged, it is hereby understood and agreed that the policy's definition of **"Securities Claim,"** is deleted in its entirety and replaced with the following:

**"Securities Claim"** means a **Claim**, other than an administrative or regulatory proceeding against, or investigation of an **Organization**, made against any **Insured**:

(1)  alleging a violation of any law, rule or regulation, whether statutory or common law (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities), which is:

    (a)  brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or

    (b)  brought by a security holder or purchaser or seller of securities of an **Organization** with respect to such security holder's, purchaser's or seller's interest in securities of such **Organization**; or

(2)  which is a **Derivative Suit**.

Notwithstanding the foregoing, the term **"Securities Claim"** shall:

(1)  include an administrative or regulatory proceeding against an **Organization** that meets the requirements of subparagraph (1) above, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person**; and

(2)  not include any **Claim** brought by any **Executive** or **Employee** of an **Organization** alleging, arising out of, based upon or attributable to the loss of, or failure to receive or obtain, the benefit of stock, stock warrants, stock options or other securities of an **Organization**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REGULATIONS. HOWEVER, FORMS AND RATES MUST

© All rights reserved

**END 018**

**2-14176**

104962 (4/10)

BR ARCHIVE Copy    Page 3 of 4

**ENDORSEMENT#** *19*

This endorsement, effective *12.01am     September 30, 2016*     forms a part of
policy number   *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by    *Illinois National Insurance Company*

### EXTRADITION AMENDED
### SOUGHT TO BE SURRENDERED

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by deleting the definition of **"Extradition"** in its entirety and replacing it with the following:

**Extradition**        means any formal process by which an **Insured Person** located in any country is sought to be surrendered to any other country for trial or otherwise to answer any criminal accusation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE



2-14176

*END 019*

106829 (9/10)

© All rights reserved.

**ENDORSEMENT#** *20*

This endorsement, effective *12.01am*     *September 30, 2016*     forms a part of
policy number   *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by     *Illinois National Insurance Company*

### ERISA EXCLUSION AMENDED TO APPLY
### SOLELY TO COMPANY BENEFIT PLANS

In consideration of the premium charged it is hereby understood and agreed that Clause 4.B *Exclusions* is amended by deleting Exclusion (6) in its entirety and replacing it with the following:

(6) *ERISA*     for any violation of responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 (ERISA), as amended, or any similar provisions of any state, local or foreign statutory or common law (**"ERISA"**) with respect to any benefit plans sponsored (solely or jointly) by the **Organization**; or

It is further understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the **ERISA** with respect to any benefit plan not sponsored (solely or jointly) by the **Organization**:

(1)     for discrimination based upon local, state or federal law, statutory or common, including but not limited to **ERISA**;

(2)     for failure to fund the a benefit plan in accordance with **ERISA** or the plan instrument or the failure to collect contributions owed to the plan;

(3)     for plan benefits, or that portion of any settlement or award in an amount equal to such plan benefits;

(4)     alleging, arising out of, based upon or attributable to any failure or omission on the part of any **Insured(s)** to effect and maintain insurance or bonding for plan property, assets or obligations;

(5)     for any **Wrongful Act** if as of *September 30, 2012* the **Insured(s)**, as of such date, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim**.

Furthermore, coverage as is afforded by virtue of this endorsement shall be specifically excess of any insurance in force, including but not limited to any insurance in force for **ERISA** claims, suits or demands including but not limited to any administrative or regulatory proceedings or investigations.

Further, if said other insurance in force as respects any such coverage is provided by the **Insurer** or any other insurance company affiliate thereof (**"Other Policy"**), (or would be provided but for the application of the retention amount, the exhaustion of the limit of liability or the failure to submit a claim), then the **Limit of Liability** for all **Loss** by virtue of this endorsement with respect to any such claims, suits or demands including but not limited to any administrative or regulatory proceedings or investigations shall be reduced by the limit of liability as set forth on the D̶e̶c̶l̶a̶r̶a̶t̶i̶o̶n̶s̶ ̶o̶f̶ ̶s̶u̶c̶h̶ ̶O̶t̶h̶e̶r̶ ̶P̶o̶l̶i̶c̶y̶ provided to

2-14176

104940 (4/10)

© All rights reserved.

END 020

Page 1 of 2

<u>ENDORSEMENT#</u> *20*    (continued)

such claims, suits or demands including but not limited to any administrative or regulatory proceedings or investigations.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

NOTICE:    THESE

APPLICABLE RATES ARE E

REGULATIONS. © All rights reserved.    YORK INSURANCE LAW AND

END 020 RDS OF THE NEW YORK

BP Archive Copy    Page 2 of 2

**2-14176**

104940 (4/10)

ENDORSEMENT# *21*

This endorsement, effective *12.01am*    *September 30, 2016*    forms a part of
policy number  *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by    *Illinois National Insurance Company*

### UK CORPORATE MANSLAUGHTER ACT DEFENSE COSTS AMENDED
### OTHER LAW

In consideration of the premium charged, it is hereby understood and agreed that Clause
13. DEFINITIONS is amended by deleting the definition of **"UK Corporate Manslaughter Act
Defense Costs"** in its entirety and replacing it with the following:

| | |
|---|---|
| **UK Corporate Manslaughter Act Defense Costs** | means **Defense Costs** incurred by an **Insured Person** that result solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Organization** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute or other law in any jurisdiction. |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

*2-14176*

*END 021*

106828 (9/10)

NOTICE: THE POLICY FORMS AND THE ... XEMPT FROM THE FILING REQUIREMENTS OF THE NEW ... ORMS AND RATES MUST MEET THE MINIMUM STAND ... Ar BRANCI by ... TIONS.

**ENDORSEMENT#** *22*

This endorsement, effective *12.01am    September 30, 2016*    forms a part of
policy number    *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by    *Illinois National Insurance Company*

### SOX 304 COSTS AMENDATORY

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by deleting the definition of **"SOX 304 Costs"** in its entirety and replacing it with the following:

**SOX 304 Costs**    means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond) and incurred by the chief executive officer or chief financial officer of the **Named Entity** to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002. **SOX 304 Costs** provided by this coverage extension do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Executive** pursuant to Section 304(a).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*2-14176*

© All rights reserved.

NOTICE: ... E POLICY FORMS AND THE ... XEMPT FROM THE FILING
REQUIREMENTS OF THE NEW ... ORMS AND RATES MUST
MEET THE MINIMUM STAND ...
106822 (9/10)    ArchBRANCbv    TIONS.

*END 022*

ENDORSEMENT# *23*

This endorsement, effective *12.01am    September 30, 2016*    forms a part of
policy number    *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by    *Illinois National Insurance Company*

## DODD-FRANK 954 COSTS

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1. Clause 2.A Executive Protection Suite is amended by deleting subparagraph (1) and replacing it with the following:

    (1) **SOX 304 Costs** and **Dodd-Frank 954 Costs**;

2. Clause 13. DEFINITIONS is amended by the addition of the following definition:

**Dodd-Frank 954 Costs**    means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond) and incurred by an **Executive** solely to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act. **Dodd-Frank 954 Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Insured Person** pursuant to Section 954.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

*2-14176*

*END 023*

NOTICE: THESE APPLICABLE RATES ARE E REGULATIONS. HOWEVER, YORK INSURANCE LAW AND IARDS OF THE NEW YORK

108595 (4/INSURANCE LAW AND REGULA

**ENDORSEMENT#** *24*

This endorsement, effective *12.01am        September 30, 2016*       forms a part of policy number   *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by    *Illinois National Insurance Company*

**RETENTION EROSION THROUGH SIDE-A INSURANCE FILL-IN**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.    The following paragraph is added to the end of Clause 5. RETENTION:

If an **Organization** fails or refuses to advance, pay or indemnify covered **Indemnifiable Loss** of an **Insured Person** within an applicable Retention, then solely to the extent an insurer agrees to pay or pays such **Loss** pursuant to the terms and conditions of a Side A-Excess DIC Insurance Policy, the **Insurer** shall recognize that the **Side A-Excess DIC Insurance Policy** payments erode (contribute to and reduce) the applicable Retention amount.

2.    As a precondition to such recognition of the erosion of the Retention amount, an **Insured** shall provide the **Insurer** with written proof, to the **Insurer's** satisfaction, of the payment of such **Loss** under the **Side A-Excess DIC Insurance Policy.**

3.    Advancement, payment or indemnification of an **Insured Person** by an **Organization** is deemed "failed" if it has been requested by an **Insured Person** in writing and has not been provided by, agreed to be provided by or acknowledged as an obligation by an **Organization** within 60 days of such request; and advancement, payment or indemnification by an **Organization** is deemed "refused" if an **Organization** gives a written notice of the refusal to the **Insured Person**. Advancement, payment or indemnification of an **Insured Person** by an **Organization** shall only be deemed "failed" or "refused" to the extent such advancement, payment or indemnification is not provided, or agreed to be provided, or acknowledged by and collectible from an **Organization.**

4.    "**Side A-Excess DIC Insurance Policy**" means any insurance policy written specifically as excess over this policy that provides "Side A" (non-indemnifiable or non-indemnified loss) coverage with difference-in-conditions features.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REGULATIONS. HOWEVER, FORMS AND RATES MUST INSURANCE LAW AND REGULATIONS.

© All rights reserved.

BRANCH Archive Copy

**END 024**

*2-14176*

104959 (4/10)

**ENDORSEMENT#** *25*

This endorsement, effective *12.01am    September 30, 2016*    forms a part of
policy number   *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by    *Illinois National Insurance Company*

### CLASS CERTIFICATION EVENT STUDY EXPENSES

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

**I.**

Clause 2. EXTENSIONS is amended by adding the following to the end thereof:

    *D. Class Certification Event Study Expenses*

        For any **Securities Claim**, no Retention shall apply to **Loss** incurred as **Class
Certification Event Study Expenses.**

**II.**

The definition of **Loss** shall include **Class Certification Event Study Expenses.**

**III.**

Clause 13. DEFINITIONS is further amended by adding the following:

| | |
|---|---|
| **Class Certification Event Study Expenses** | means the reasonable and necessary fees, costs and expenses of an expert witness consented to by the **Insurer**, which consent shall not be unreasonably withheld, incurred by an **Insured** to conduct an admissible event study regarding any issues of fact relevant to the court's decision as to whether to grant class certification in a **Securities Claim.** |

**IV.**

If the **Panel Counsel** firm defending a **Securities Claim** recommends to the **Insured** a
specific expert witness to conduct an event study in the defense of such **Securities Claim**,
then the **Insured** may hire such expert witness to perform such event study without further
approval by the **Insurer.**

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

NOTICE:    THESE
APPLICABLE RATES ARE E
REGULATIONS. HOWEVER, *END 025*   INSURANCE LAW AND
                    ARDS OF THE NEW YORK
© All rights reserved.

*2-14176*

117960 (6/                              1 of 1

**ENDORSEMENT# 26**

This endorsement, effective  *12.01am*        *September 30, 2016*      forms a part of
policy number  *01-863-24-81*
issued to     *AMTRUST FINANCIAL SERVICES, INC.*

by      *Illinois National Insurance Company*

### DEFINITION OF INSURED AMENDED

In consideration of the premium charged, it is hereby understood and agreed that in Clause
13. **DEFINITIONS**, the definition of " **Insured**" is hereby amended to include the following
entities, and any **Insured Person** thereof:

    1. Crop Pro Insurance LLC

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*2-14176*

MNSCPT

NOTICE

REQUIREMENTS OF THE NEW YORK INSURANCE DEPARTMENT AUTHORIZED REPRESENTATIVE

MEET THE MINIMUM STANDARDS OF THE NEW YORK

© All rights reserved

*BRANCH       END 26*
*Archive Copy*

**ENDORSEMENT#** *27*

This endorsement, effective *12.01am*      *September 30, 2016*      forms a part of
policy number   *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by      *Illinois National Insurance Company*

**TERRORISM EXCLUSION - CERTIFIED ACTS**

This insurance does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of an "act of terrorism", which is defined in the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2007 (collectively, "TRIA") as follows:

(1)   ACT OF TERRORISM. -
    (A)   CERTIFICATION. -  The term "act of terrorism" means any act that is certified by the Secretary [of the Treasury], in concurrence with the Secretary of State, and the Attorney General of the United States -
        (i)   to be an act of terrorism;
        (ii)   to be a violent act or an act that is dangerous to -
            (I)   human life;
            (II)   property; or
            (III)   infrastructure;
        (iii)   to have resulted in damage within the United States, or outside of the United States in the case of -
            (I)   an air carrier or vessel [described in TRIA]; or
            (II)   the premises of a United States mission; and
        (iv)   to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
    (B)   LIMITATION. -   No act shall be certified by the Secretary as an act of terrorism if -
        (i)   the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or
        (ii)   property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.
    (C)   DETERMINATIONS FINAL. -  Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.
    (D)   NONDELEGATION. - The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

The following applies solely to commercial property policies:

Where required by state law, if an act of terrorism results in fire, the Insurer will pay for the direct loss or damage to Covered Property, as this term is defined in the commercial property policy, caused by that fire.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE:**   THESE
APPLICABLE  RATES  ARE  E
REGULATIONS.  HOWEVER
INSURANCE LAW AND REGU
**BRANCH**  Archive  Copy

© All rights reserved.
YORK INSURAN... ...ZED REPRESENTATIVE
...RDS OF THE NEW YORK

*2-14176*

96557 (2/08)

*END 027*

Page 1 of 1

**ENDORSEMENT# *28***

This endorsement, effective *12.01am    September 30, 2016*    forms a part of
policy number  *01-863-24-81*
issued to    *AMTRUST FINANCIAL SERVICES, INC.*

by    *Illinois National Insurance Company*

### SIDE-A MATCH EDGE (SAME)
*(Matches Primary Side-A Coverage With Your AIG Side-A Excess Coverage)*
*(Without Reinstatement Features)*

In consideration of the premium charged, it is hereby understood and agreed that if an insurance policy issued by the **Insurer** or one of its affiliates provides a limit of liability written specifically as the lead Side-A excess (the " **AIG Lead Side-A Policy**") over, directly or indirectly, this policy's **Limit of Liability**, then this policy is amended as follows:

*Side-A Match (Liberalization)*: For any **Claim** against or **Pre-Claim Inquiry** received by any **Insured Person**, this policy's *Insured Person Coverage A* and its Clause 3.A. *Advancement* (the " **Side-A Coverage**") shall be extended to include coverage provided by the **AIG Lead Side-A Policy** that is not already encompassed in the **Side-A Coverage.**

The *Side-A Match* shall not: (i) serve to increase the **Limit of Liability** under or extend any reinstatement of limits features into this policy; (ii) apply to any endorsement to this policy that specifically provides that the *Side-A Match* clause does not apply to it; or (iii) modify any term, condition or exclusion applicable to any coverage afforded under this policy, other than the coverage provided under the **Side-A Coverage.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*2-14176*

117146 (12/13)  *BRANCH*    *END 28*
*Archive Copy*

NOTICE:
REQUIREMENTS OF THE NEW YORK INSURANCE DEPARTMENT
MEET THE MINIMUM STANDARDS OF THE NEW YORK
© All rights reserved
AUTHORIZED REPRESENTATIVE

**ENDORSEMENT#** *29*

This endorsement, effective *12.01am    September 30, 2016*    forms a part of
policy number   *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by    *Illinois National Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 104122 | 04/10 | D&O ADMITTED DEC |
| 96555 | 01/15 | TRIA DEC DISCLOSURE FORM |
| 75029 | 07/02 | NEW YORK REG. 121 DEC. DISCLOSURE |
| 104123 | 04/10 | D&O ADMITTED GUTS |
| 104163 | 04/10 | PASSPORT STRUCTURE APPENDIX |
| 104870 | 04/10 | CRISISFUND APPENDIX |
| 69898 | 09/06 | NEW YORK AMENDATORY - CANCELLATION/NONRENEWAL |
| 75027 | 03/00 | NEW YORK CLAIMS MADE AMENDATORY |
| 75030 | 07/02 | NEW YORK DISCOVERY ENDORSEMENT |
| 76812 | 05/06 | NEW YORK REG. 110 RETENTION COINSURANCE ENDORSEMENT |
| 83231 | 01/09 | NEW YORK LAW 3420 AMENDATORY ENDORSEMENT |
| 108598 | 04/11 | NOTICE AND REPORTING AMENDED 90-DAY POST POLICY REPORTING PERIOD |
| 106824 | 09/10 | ENTITY V INSURED EXCLUSION AMENDED WHISTLEBLOWER CARVEBACK |
| 108596 | 04/11 | ENTITY V INSURED EXCLUSION AMENDED CARVEBACKS A AND B DELETE IN DEFENDING ANY CLAIM AGAINST THAT INSURED PERSON WHISTLEBLOWER CARVEBACK |
| 107187 | 11/10 | ENTITY V. INSURED EXCLUSION AMENDED |
| 119679 | 09/15 | ECONOMIC SANCTIONS ENDORSEMENT |
| 108606 | 04/11 | SEVERABILITY OF EXCLUSIONS AMENDED TOP 3 OF NAMED ENTITY |
| 104143 | 04/10 | SPECIFIC INVESTIGATION CLAIMS LITIGATION EVENT OR ACT EXCLUSION |
| 104141 | 04/10 | PROFESSIONAL ERRORS & OMISSIONS EXCLUSION (WITH SECURITIES CLAIM CARVE-OUT) |
| MNSCPT | | PROFESSIONAL ERRORS & OMISSIONS EXCLUSION |
| 104938 | 04/10 | EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION WITH SUBLIMIT OF LIABILITY |

REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

© All rights reserved.

*Archive Copy*

**END 029**

**2-14176**

78859 (10/01)    **BRANCH**    Page 1 of 2

### ENDORSEMENT# *29*

This endorsement, effective *12.01am    September 30, 2016*                 forms a part of
policy number   *01-863-24-81*
issued to *AMTRUST FINANCIAL SERVICES, INC.*

by     *Illinois National Insurance Company*

### FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 106013 | 07/10 | CLAIM DEFINITION AMENDED |
| 94039 | 05/07 | STATE AMENDATORY INCONSISTENT |
| 104962 | 04/10 | SECURITIES CLAIM DEFINITION - COMMON LAW |
| 106829 | 09/10 | EXTRADITION AMENDED SOUGHT TO BE SURRENDERED |
| 104940 | 04/10 | ERISA EXCLUSION AMENDED TO APPLY SOLELY TO COMPANY BENEFIT PLANS |
| 106828 | 09/10 | UK CORPORATE MANSLAUGHTER ACT DEFENSE COSTS AMENDED OTHER LAW |
| 106822 | 09/10 | SOX 304 COSTS AMENDATORY |
| 108595 | 04/11 | DODD-FRANK 954 COSTS |
| 104959 | 04/10 | RETENTION EROSION THROUGH SIDE-A INSURANCE FILL-IN |
| 117960 | 06/14 | CLASS CERTIFICATION EVENT STUDY EXPENSES |
| MNSCPT |  | DEFINITION OF INSURED AMENDED |
| 96557 | 02/08 | TERRORISM EXCLUSION - CERTIFIED ACTS |
| 117146 | 12/13 | SIDE-A MATCH EDGE (SAME) |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |
| 75031 | 07/02 | NEW YORK REG. 121 APPLICATION DISCLOSURE |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

**NOTICE:** THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REGULATIONS. HOWEVER, FORMS AND RATES MUST
INSURANCE LAW AND REGULATIONS.

*2-14176*

*Archive Copy*    *END 029*

78859 (10/01)    *BRANCH*    Page 2 of 2

## NEW YORK REGULATION 121
## APPLICATION DISCLOSURE SUPPLEMENT

Solely for the purposes of this supplement, "Claims-made relationship" means that period of time between the effective date of the first claims made policy between us (the Insured) and you (the policy holder) and the cancellation or nonrenewal of the last consecutive claims-made policy between such parties, where there has been no gap in coverage, but does not include any period covered by tail coverage.

### Retroactive Date/Prior Acts Exclusion Date/"Nose" Coverage

Coverage for events that occurred prior to the beginning of the policy period is referred to in this supplement as "nose" coverage. If the policy has a retroactive date feature or an exclusion or other wording deleting coverage for events that occurred before a certain date (a prior acts exclusion), then nose coverage is limited (or non existent) and **THERE WILL BE NO COVERAGE FOR CLAIMS ARISING OUT OF SUCH EVENTS THAT OCCURRED PRIOR TO THAT DATE.**

### Extended Reporting Period/Discovery Period/"Tail" Coverage

The Extended Reporting Period, or Discovery Period as it may be called, will increase the time within which a claim may be eligible for the policy's coverage. This is referred to in this supplement as "tail" coverage. Tail coverage helps to prevent the situation of a claim going uncovered because of cancellation or nonrenewal of the policy or other termination of coverage. Tail coverage provides for a period of time after termination of coverage during which claims first made against you and reported to us in writing, events that occurred before the termination of coverage and otherwise covered by the policy, will be covered. Generally, this optional tail coverage can be purchased if coverage is terminated either by us or by you. If such optional tail coverage is not purchased, an automatic tail coverage goes into effect upon termination of coverage, however, this automatic tail coverage lasts for only 60 days, (90 days if the policyholder is a public entity as defined in section 107(a)(51) of the New York Insurance Law). After the expiration of the tail coverage, you will have a gap in your insurance coverage, unless you have obtained appropriate coverage to fill the gap. **UPON TERMINATION OF COVERAGE IT IS VERY IMPORTANT THAT YOU CONSULT WITH YOUR INSURANCE AGENT, BROKER OR OTHER PROFESSIONAL INSURANCE ADVISER.**

The length of the optional tail offered in the policy is one (1) year generally, but, this option will not be available in some circumstances. It will not be available if coverage is terminated by us because of non-payment of premium or fraud and at the effective date of such termination of coverage a claims-made relationship has continued for less than one year.

### Future Premium Increases As Claims-Made Relationship Matures

During the first several years of being covered on a claims-made basis, claims-made rates are generally comparatively lower than rates on other types of policies generally known as occurrence policies, especially if there is no nose coverage initially, and you can expect substantial annual premium increases, independent of overall rate level increases, until the claims-made relationship reaches maturity.

### Length of Optional Tail and Premium Charged For it

The length of the optional tail offered in the policy and the premium charged for it is as follows (please see the policy form and endorsements for complete details):

NOTICE:
APPLICABLE RATES ARE EXEMPT FROM THE FILING

© All rights reserved.

*2-14176*

75031 (7/02)    ARCHive Copy    Page 1 of 2

| Length Of Optional Tail | Premium Charge For Optional Tail |
|---|---|
| One Year | *125* % |

**THIS DISCLOSURE SUPPLEMENT GENERALLY DISCUSSES CERTAIN IMPORTANT FEATURES OF THE POLICY. PLEASE READ THE ENTIRE POLICY CAREFULLY AND DISCUSS IT WITH YOUR INSURANCE AGENT OR BROKER OR OTHER PROFESSIONAL INSURANCE ADVISER. THE PROVISIONS OF THE POLICY FORM AND ENDORSEMENTS THERETO ARE CONTROLLING.**

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REGULATIONS. HOWEVER, FORMS AND RATES MUST INSURANCE LAW AND REGULATIONS.

© All rights reserved.

**2-14176**

75031 (7/02)    BRANCH **Archive Copy**    Page 2 of 2