IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMTRUST FINANCIAL SERVICES, INC.,

    Plaintiff,

  v.

LIBERTY INSURANCE UNDERWRITERS INC.,

    Defendant.

C.A. No. 21-374-JLH

## MEMORANDUM OPINION

David J. Baldwin, Peter C. McGivney, BERGER HARRIS LLP, Wilmington, Delaware.

Peter M. Gillon, Matthew G. Jeweler, PILLSBURY WINTHROP SHAW PITTMAN LLP, Washington, District of Columbia.

    Attorneys for Plaintiff.

Robert J. Katzenstein, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, Delaware.

Ronald P. Schiller, Daniel J. Layden, HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER, Philadelphia, Pennsylvania.

    Attorneys for Defendant.

March 31, 2022

**JENNIFER L. HALL, U.S. MAGISTRATE JUDGE**

This is an insurance coverage dispute between AmTrust Financial Services, Inc. ("AmTrust"), a property and casualty insurance holding company, and its excess insurer, Liberty Insurance Underwriters Inc. ("Liberty"). AmTrust contends that Liberty is obligated to reimburse costs incurred by Amtrust in (1) defending a consolidated securities litigation in the United States District Court for the Southern District of New York (the "2017 Securities Litigation"); (2) defending a consolidated derivative litigation in the United States District Court for the District of Delaware (the "2017 Derivative Litigation"); and (3) responding to the Securities and Exchange Commission's requests to interview AmTrust employees, officers, and executives about matters related to SEC subpoenas served on AmTrust in April 2017 (the "SEC Investigation").

Liberty has moved to dismiss AmTrust's First Amended Complaint for failure to state a claim. (D.I. 25.) According to Liberty, this action should be dismissed because the costs AmTrust incurred in responding to the 2017 Securities Litigation, the 2017 Derivative Litigation, and the SEC Investigation are not covered and/or are excluded from coverage under the policy.

The Court concludes that the First Amended Complaint states a plausible claim for relief. Accordingly, Liberty's motion to dismiss is DENIED.

I. BACKGROUND[1]

A. AmTrust's D&O Policies

The 2017 Securities Litigation and the 2017 Derivative Litigation were filed in March 2017, and the SEC served subpoenas on AmTrust in April 2017. Plaintiff AmTrust has a number of Directors & Officers (D&O) "claims made" insurance policies covering that time period. (D.I. 19 ¶ 34, Ex. F.) AmTrust has a $10 million primary policy with non-party Illinois National Insurance Company, effective September 30, 2016, to October 21, 2017 ("AIG Primary Policy"). (*Id.* ¶¶ 4, 31.) The AIG Primary Policy has a $1 million self-insured retention. (*Id.* ¶ 32.) AmTrust has a $10 million layer of excess coverage with non-party Atlantic Specialty Insurance Company for the same time period ("OneBeacon Excess Policy"). (*Id.* ¶¶ 4, 33.) The OneBeacon Excess Policy "follows form" to the AIG Primary Policy (*i.e.*, it adopts the terms and conditions of the AIG Primary Policy). (*Id.* ¶ 33.) AmTrust also has a $10 million second-layer excess policy with Defendant Liberty that follows form to the AIG Primary Policy. (*Id.* ¶¶ 34, 36, Ex. E (Liberty Excess Policy).)

The policies cover (among other things) Loss incurred by AmTrust for (i) a Claim against an Insured Person (including an executive or employee of Amtrust) for a Wrongful Act or indemnifying an Insured Person for a Pre-Claim Inquiry (Side B) and (ii) a Securities Claim against AmTrust (Side C). (*Id.*, Ex. D § 1.) A Pre-Claim Inquiry is defined to include a request for an Insured Person to appear at an interview or to produce documents that concern AmTrust, and Pre-

---

[1] I assume the facts alleged in the First Amended Complaint to be true for purposes of resolving the motion to dismiss them for failure to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In resolving the motion, the Court may consider facts alleged in the complaint and its attachments, matters of public record, and "document[s] integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

3

Claim Inquiry Costs can include expenses incurred by an Insured Person solely in connection with his/her preparation for and response to a Pre-Claim Inquiry. (*Id.*, Ex. D § 13.)

The policies contain a notice requirement that Liberty has raised in this dispute as a basis for failing to provide coverage. AmTrust is required, "as a condition precedent" to the obligations of its insurer, to notify the insurer in writing during the policy period of a Claim or of Amtrust's election to seek coverage for Pre-Claim Inquiry Costs. (*Id.*, Ex. D § 7(a).)

The policies also contain an exclusion that Liberty has raised in this dispute as a basis for failing to provide coverage. The policies exclude coverage for "Claims or Pre-Claim Inquiries arising out of any circumstances of which notice has been given under any directors and officers liability insurance policy in force prior to" its September 30, 2016, inception. (*Id.*, Ex. D § 7(b).)

### B.      The 2017 Securities Litigation

In 2017, AmTrust made changes to its accounting policies that resulted in it restating its financials: (1) it changed the timing for recognizing the portion of warranty contract revenue associated with administration services—which Amtrust had previously recognized at the time of sale, rather than over the life of the contract; and (2) it changed the timing for expensing bonuses—which it had previously expensed in the year paid, rather than in the year earned. (*Id.* ¶ 16, Ex. A ¶ 87, Ex. C ¶ 201.) Following the restatement, AmTrust's stock price declined, and the company and several of its directors and officers were named as defendants in various securities actions filed in and around March 2017. (*Id.* ¶ 16, Ex. A.) Those actions were consolidated into a single securities class action styled *In re AmTrust Financial Services, Inc. Securities Litigation*, C.A. No. 17-1545, in the United States District Court for the Southern District of New York. (*Id.*)

The 2017 Securities Litigation alleged federal Securities Exchange Act claims against AmTrust and its officers and directors. (*Id.* ¶¶ 16–17, Ex. A.) Among other things, the plaintiffs

alleged that certain assertions by the defendants about AmTrust's financial results and condition prior to the 2017 restatement were false. (*Id.*, Ex. A ¶¶ 2–3.) The plaintiffs in that case also alleged—and this is pertinent to Liberty's argument in this case—that the defendants knew that AmTrust was improperly accounting for bonuses because an investment adviser, Alistair Capital Management, LLC, wrote a December 18, 2014, public letter questioning certain of AmTrust's accounting practices (the "Alistair Letter"). (*Id.*, Ex. A ¶¶ 329–38.)

The district court dismissed the 2017 Securities Litigation with prejudice on April 20, 2020, after several rounds of motion to dismiss briefing. (*Id.* ¶¶ 18–19.) *In re AmTrust*, 2020 WL 2787117 (Apr. 20, 2020) (dismissing third amended complaint), *and* 2019 WL 4257110 (Sept. 9, 2019) (dismissing second amended complaint). Among other things, the court rejected the plaintiffs' theory that the Alistair letter put the defendants on notice of accounting issues relating to the expensing of bonuses, stating: "There is a gaping hole in plaintiffs' theory. The published materials [including the Alistair Letter] do not question or draw attention to AmTrust's accounting for discretionary bonuses." 2019 WL 4257110, at *19.

The plaintiffs have appealed the district court's dismissal, and AmTrust continues to incur expenses in connection with the case. (D.I. 19 ¶ 20.)

C. **The 2017 Derivative Litigation**

Also around March 2017, several of AmTrust's directors and officers were sued in derivative actions in which AmTrust was named as a nominal defendant. (*Id.* ¶ 21.) Those cases were consolidated into an action styled *In re AmTrust Financial Services, Inc. Derivative Litigation*, C.A. No. 17-553-MN, in the United States District Court for the District of Delaware. (*Id.*)

5

Like the 2017 Securities Litigation, the 2017 Derivative Litigation also related to the change in treatment of warranty and bonus accounting that resulted in AmTrust's 2017 restatement of its financials. (*Id.* ¶ 22, Ex. C.) The 2017 Derivative Litigation was voluntarily dismissed on February 14, 2019. (*Id.* ¶ 24.)

### D. The SEC Investigation

In April 2017, the SEC served subpoenas on AmTrust for documents relating to (i) warranty premiums and losses; (ii) earning patterns for premiums in the warranty business; and (iii) setting of loss ratios. (*Id.* ¶¶ 25–26.) Subsequently, the SEC requested interviews and went on to take the testimony of numerous AmTrust officers and employees. (*Id.* ¶ 27.) AmTrust retained defense counsel to prepare and represent those individuals in their interviews. (*Id.* ¶ 63.) AmTrust ultimately entered into a Consent Decree with the SEC, which was approved by the United States District Court for the Southern District of New York on June 19, 2020. (*Id.* ¶ 28.)

### E. The Insurers' Coverage Decisions

As AmTrust incurred expenses defending the 2017 Securities and Derivative Litigations and responding to the SEC Investigation, it was also dealing with its D&O insurers. AmTrust provided written notice of the 2017 Securities Litigation to its insurers on March 3, 2017, and it provided written notice of the 2017 Derivative Litigation on April 27, 2017. (*Id.* ¶¶ 53–54.) In a letter dated August 11, 2017, Liberty acknowledged that the 2017 Securities and Derivative Litigations triggered coverage and concluded that they should be treated as a single claim under the Liberty Excess Policy. (*Id.* ¶ 56, Ex. H.)

On September 7, 2017, AmTrust met with its D&O insurers. (*Id.* ¶ 58.) At the meeting, AmTrust notified its insurers, including Liberty, of the April 2017 SEC subpoenas and obtained their consent to retain the appropriate defense counsel. (*Id.* ¶ 60.)

Subsequently, AmTrust began discussions with AIG for reimbursement of AmTrust's defense expenses in excess of the AIG Primary Policy's $1 million retention. (*Id.* ¶ 64.) At some point, AIG began reimbursing the costs that AmTrust incurred to defend against the 2017 Securities and Derivative Litigations. (*Id.* ¶¶ 64–65.) AIG also began to reimburse, as Pre-Claim Inquiry Costs, the costs to prepare and defend individual directors and officers in connection with the SEC Investigation. (*Id.* ¶ 66.)

In addition, although AmTrust's expenses in connection with its own response to the April 2017 SEC subpoenas were not covered under the AIG Primary Policy, AIG acknowledged that some of those expenses were related to AmTrust's defense of the 2017 Securities Litigation, and thus served dual purposes. (*Id.* ¶ 67.) Accordingly, AIG allocated 50% of the overlapping defense expenses incurred by AmTrust in responding to the April 2017 SEC subpoenas as covered costs in defense of the 2017 Securities Litigation. (*Id.* ¶ 68.) On September 24, 2018, AIG fully exhausted the $10 million limit of liability of the AIG Primary Policy. (*Id.* ¶ 70.)

Subsequently, OneBeacon began reimbursing the costs that AmTrust incurred to defend against the 2017 Securities and Derivative Litigations, as well as the individuals' costs in connection with SEC Investigation (as Pre-Claim Inquiry Costs). (*Id.* ¶ 74.) OneBeacon also agreed to allocate 40% of the overlapping defense expenses incurred by AmTrust in responding to the April 2017 SEC subpoenas as covered costs in defense of the 2017 Securities Litigation. (*Id.* ¶ 75.) On July 10, 2019, OneBeacon exhausted the $10 million limit of liability of the OneBeacon Excess Policy. (*Id.* ¶ 77.)

When it filed its First Amended Complaint (FAC) against Liberty on May 28, 2021, AmTrust had incurred over $9.4 million in defense costs and Pre-Claim Inquiry Costs in excess of the Liberty Excess Policy attachment point, excluding the amounts that AIG and OneBeacon

allocated to uncovered loss.  (*Id.* ¶ 92.)   However, Liberty has refused to reimburse any of AmTrust's expenses.  (*Id.* ¶ 88.)

The FAC alleges that Liberty breached the terms of the Liberty Excess Policy and it requests coverage declarations.  On June 29, 2021, Liberty filed a motion to dismiss the FAC for failure to state a claim.  (D.I. 25.)  The Court heard oral argument on February 17, 2022.  ("Tr. __.")

## II.   LEGAL STANDARDS

A party may move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A possibility of relief is not enough.  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining the sufficiency of the complaint under the plausibility standard, all "well-pleaded facts" are assumed to be true, but legal conclusions are not.  *Id.* at 679.  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Twombly*, 550 U.S. at 558 (internal marks omitted).

**III.   DISCUSSION**

Liberty makes three primary arguments in support of dismissal: (1) the 2017 Securities and Derivative Litigations and the SEC Investigation are excluded from coverage because they all arise out of circumstances that AmTrust reported during a prior policy year; (2) AmTrust has failed to adequately plead exhaustion of the underlying policy limits; and (3) AmTrust failed to provide written notice of its intent to seek reimbursement for expenses associated with the SEC Investigation.[2]  The Court takes each in turn.

### A.   The FAC plausibly alleges loss that does not fall within the scope of the exclusion.

Liberty argues that the FAC fails to state a claim because the 2017 Securities and Derivative Litigations and the SEC Investigation all fall within the policies' exclusion from coverage of "Claims and Pre-Claim Inquiries arising out of any circumstances of which notice has been given under any directors and officers liability insurance policy in force prior to" September 30, 2016.  (D.I. 19, Ex. A § 7(b).)  In particular, Liberty argues that the 2017 matters for which AmTrust seeks coverage arise out of the same circumstances that gave rise to the 2014 Alistair letter, which Amtrust provided to its insurers in 2015 as a "notice of circumstances which may give rise to a Claim."  (*Id.* ¶¶ 78–79, Ex. K.)

The Court declines to conclude as a matter of law at this stage of the proceedings that the exclusion bars coverage, as the record before the Court suggests a plausible claim that the 2017 matters and the Alistair letter did not "aris[e] out of" the same circumstances within the meaning

---

[2] The parties' briefing does not distinguish or make separate arguments with respect to the individual counts alleged in the FAC.  Accordingly, the Court will do the same.

of the policy.³ The particular deficiencies alleged by the Alistair letter related to AmTrust's accounting for deferred acquisition costs, valuation of life settlement contracts, accounting of reinsurance assets related to Maiden Holdings, Ltd., accounting of Luxembourg Reinsurance Captives, and accounting for loss reserves assumed in acquisitions. (*Id.* ¶¶ 79–80, Ex. L at 2; D.I. 26 at 4.) In contrast, the 2017 Securities and Derivative Litigations arose as a result of AmTrust's restatement of its financials due to a change in its accounting practices for warranties and bonuses. The 2017 subpoenas served as part of the SEC Investigation likewise requested information regarding accounting for warranties. In addition, as AmTrust correctly observes, the 2017 matters (1) were not instituted until after AmTrust's 2017 restatement of financials, which occurred years after the Alistair letter and (2) assert different legal claims regarding different alleged misrepresentations than those set forth in the Alistair letter. And no one has suggested that the Alistair letter somehow initiated a chain of events that led to AmTrust's 2017 restatement or to the SEC Investigation.

To be sure, the Alistair letter makes broad references to improper accounting and weaknesses in internal controls, and the warranty and bonus accounting issues that gave rise to the

---

³ The Court need not decide whether Delaware or New York law applies to the interpretation of the policies, as the parties have not identified any differences that would affect resolution of the pending motion. Contrary to the cases cited by AmTrust, the Delaware Supreme Court has very recently made clear that "[w]hether a claim relates back to an earlier claim" under an insurance policy's related claims provision "is decided by the language of the policy." *First Solar, Inc. v. Nat'l Union First Ins. Co. of Pittsburgh, PA*, No. 217, 2021, 2022 WL 792158, at *6 (Del. Mar. 16, 2022). Moreover, as Liberty points out, the policy at issue here uses the phrase "arising out of" language, which, under both Delaware and New York law, is construed broadly. *Pac. Ins. Co. v. Liberty Mut. Ins. Co.*, 956 A.2d 1246, 1256–57 (Del. 2008) ("[U]nder Delaware law, the term 'arising out of' is broadly construed to require some meaningful linkage between the two conditions . . . ."); *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 568 (2d Cir. 2011) ("[T]he phrase 'arising out of' is 'ordinarily understood to mean originating from, incident to, or having connection with.'" (quoting *Maroney v. N.Y. Cent. Mut. Fire Ins. Co.*, 839 N.E.2d 886, 889 (N.Y. 2005))).

2017 matters fall under that wide umbrella. However, as AmTrust points out, its accounting is fundamental to its business as an insurance company. If the circumstances described in the Alistair letter are characterized at such a high level of abstraction—*i.e.*, as accounting problems—it is unclear what the 2017 insurance policies would cover, as it is hard for the Court to imagine what, if any, derivative or securities claim involving an insurance company could not be said to arise from an accounting error.

Indeed, Liberty's counsel clarified at oral argument that it does not contend that AmTrust giving notice of the Alistair letter in 2015 bars coverage of any claim or inquiry arising from accounting errors or poor internal controls. (Tr. 11–14.) Rather, Liberty contends that the Alistair letter and the 2017 Securities and Derivative Litigations arise from the same circumstances because the pleadings in those litigations expressly reference the Alistair Letter. I reject that argument. The mere mention of the Alistair letter in the later pleadings does not mean that they all arise from the same circumstances. As explained above, the record before the Court reflects that they may not have. The fact that the 2017 Securities Litigation plaintiffs attempted—unsuccessfully—to suggest that AmTrust's notice of certain alleged deficiencies provided by the 2014 Alistair letter somehow also put AmTrust on notice of different deficiencies that ultimately resulted in the 2017 restatement does not necessarily lead to the conclusion that all of those deficiencies arose from the same circumstances.[4]

---

[4] The Court's conclusion is consistent with the 2017 Securities Litigation court, which dismissed that case after observing that the Alistair letter "does not question or draw attention to AmTrust's accounting for discretionary bonuses." 2019 WL 4257110, at *19. Liberty points out that it would be inappropriate for this Court to conclude that the 2017 Securities Litigation does not arise from the same circumstances as the Alistair letter merely because the 2017 Securities Litigation was unsuccessful. I agree with that point. If the plaintiffs in the 2017 Securities Litigation had alleged the same underlying accounting deficiencies as those described in the Alistair letter, it would not matter that the 2017 Securities Litigation was ultimately unsuccessful.

Liberty relies on the Delaware Supreme Court's recent decision in *First Solar Inc. v. National Union Fire Insurance Co.*, No. 217, 2021, 2022 WL 792158 (Del. Mar. 22, 2022), but that case is distinguishable on multiple grounds. For one thing, the policy in that case used different language. *See id.* at *2, 6 (interpreting a policy that excluded coverage for related claims "alleging, arising out of, based upon or attributable to any facts or Wrongful Acts that are the same as or related to those that were" alleged in an earlier reported claim, and holding that "[w]hether a claim relates back to an earlier claim is decided by the language of the policy"). Most notably, the court in that case concluded that the two actions alleged to arise from the same facts both involved the insured's misrepresentations about the cost of solar power as a part of a single fraudulent scheme to increase its stock prices. *Id.* at *7. The record here, in contrast, does not suggest a meaningful linkage between the accounting issues identified in the Alistair Letter and the accounting issues that gave rise to the restatement and the 2017 matters, much less that they arose from a single fraudulent scheme.

AmTrust has plausibly alleged that the 2017 matters do not arise from the same circumstances alleged in the Alistair letter. Accordingly, the Court rejects Liberty's contention that the case should be dismissed because the 2017 matters fall within the exclusion from coverage.

---

The two cases might be said to arise from the same circumstances and the 2017 Securities Litigation might be excluded from coverage. But that is not the situation here. The record before the Court reflects that the plaintiffs in the 2017 Securities Litigation did not allege the same underlying accounting deficiencies as those described in the Alistair letter.

Liberty also asks the Court to consider AmTrust's May 4, 2018, proxy filing with the SEC, which, Liberty contends, conclusively demonstrates that the costs incurred by AmTrust in responding to the SEC Investigation arose from the same circumstances as those described in the Alistair Letter. (D.I. 26 at 15, Ex. D.) That document was not referenced or relied on in the pleadings. Even if it were appropriately considered on a motion to dismiss, the Court is unpersuaded that it demonstrates as a matter of law that the particular Pre-Claim Inquiry Costs and other expenses sought by AmTrust in this case arose from the circumstances described in the Alistair Letter.

B. **The FAC plausibly alleges exhaustion of the underlying policies.**

Liberty next argues that the case should be dismissed because the FAC fails to plausibly allege that the $20 million of underlying limits has been exhausted. I disagree.

The FAC alleges that the AIG Primary Policy and the OneBeacon Excess Policy have been exhausted. (D.I. 19 ¶¶ 70, 77, 105–06, Ex. I (e-mail from AIG to AmTrust confirming exhaustion of the AIG Primary Policy), Ex. J (e-mail from OneBeacon to AmTrust enclosing the payment summary for the OneBeacon Excess Policy).) The FAC further alleges that, at the time of filing, "AmTrust ha[d] incurred over $9.4 million in Defense Costs and Pre-Claim Inquiry Costs in excess of the Liberty Excess Policy attachment point of $20 million, excluding amounts AIG and OneBeacon allocated to uncovered Loss . . . ." (*Id.* ¶ 92.) It also alleges that AmTrust continues to incur defense costs in connection with the 2017 Securities Litigation, the dismissal of which is currently being appealed by the plaintiffs in that action. (*Id.* ¶¶ 19–20.) That is enough to move forward at this stage.

Liberty does not appear to contest that AIG and OneBeacon *did pay* out their policy limits. Instead, it contends that they *shouldn't have paid* the $20 million they did because (according to Liberty) some of the costs they reimbursed were for AmTrust's responses to the SEC subpoenas, which are not covered by the policies. For its part, AmTrust appears to agree that its own expenses in responding to the 2014 SEC document subpoenas are not covered, but it argues that some of the costs it incurred responding to the SEC Investigation are appropriately treated as Pre-Claim Inquiry Costs and some are appropriately allocated to its defense of the 2017 Securities Litigation. AmTrust further contends that Liberty cannot challenge the underlying insurers' payment decisions in order to argue that their policy limits were not (or should not have been) exhausted.

13

The Court need not resolve all those disputes in order to resolve Liberty's motion.  AmTrust has alleged that the underlying insurers did pay the limits on their policies and that AmTrust is continuing to incur expenses in defense of the 2017 Securities Litigation, and those allegations are enough to make plausible AmTrust's claims for coverage.

### C. Liberty's lack-of-written-notice argument is not a basis for dismissal.

Liberty's final argument is that it did not receive written notice during the policy period of AmTrust's intent to seek reimbursement for Pre-Claim Inquiry Costs incurred in responding to the SEC Investigation.  Even if I agreed with Liberty, that would not be a basis to dismiss the FAC.  As explained above, AmTrust has alleged that the underlying insurers exhausted their policies and that AmTrust is continuing to incur expenses in defense of the 2017 Securities Litigation.  That is enough for the case to move forward.

## IV. CONCLUSION

The Court has carefully considered the remaining arguments and cases cited by the parties and has determined that they do not warrant further discussion in light of the conclusions set forth above.  Liberty's motion to dismiss the FAC is denied.